647 A.2d 981

Elmer J. STINER, c/o Helen Stiner, Petitioner

v.

**WORKMEN'S COMPENSATION APPEAL BOARD**
**(Harmar Coal Company and Old Republic**
**Insurance Company), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 15, 1994.

Decided Sept. 1, 1994.

Petition for Allowance of Appeal
Denied Dec. 15, 1994.

John D. Hendricks and David K. Trautman, for petitioner.

Anniken U. Davenport, Asst. Counsel, for respondent, Bureau of Workers' Compensation.

George H. Thompson, for respondent, Harmar Coal Co. and Old Republic Ins. Co.

Before PELLEGRINI and FRIEDMAN, JJ., and RODGERS, Senior Judge.

FRIEDMAN, Judge.

Helen Stiner (Claimant), widow of Elmer J. Stiner (Decedent), appeals from an order of the Workmen's Compensation Appeal Board (Board) affirming a referee's [1] dismissal of Claimant's fatal claim petition. We affirm.

1. Referees are now called Workers' Compensation Judges under the new amendments to the Workers' Compensation Act effective August 31, 1993. Because this case was before the Referee prior to the effective date of the amendments, however, we will refer to the Referee as such and not as Workers' Compensation Judge.

■ Decedent received benefits during his lifetime for disability due to coal-worker's pneumoconiosis. Pursuant to section 305.1 of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411.1,[2] Decedent's employer, Harmar Coal Company (Employer), bore seventy-five percent of the liability for Decedent's disability and the Commonwealth of Pennsylvania bore the remaining twenty-five percent.[3] Decedent continued to receive benefits until his death on February 21, 1980.

Claimant subsequently filed a fatal claim petition seeking benefits under section 307 of the Act, 77 P.S. § 542,[4] claiming that coal-worker's pneumoconiosis substantially contributed to Decedent's death. Following evidentiary hearings, the referee determined that Decedent's death resulted totally from coalworker's pneumoconiosis and awarded benefits. Employer

2. Section 305.1 provides in pertinent part:

> Any compensation payable under this act for silicosis, anthracosilicosis or coal-worker's pneumoconiosis as defined in section 108(q) for disability occurring ... between July 1, 1975 and June 30, 1976, inclusive, the employer shall pay seventy-five per centum and the Commonwealth twenty-five per centum....

3. Claimant's petition for review did not name the Commonwealth of Pennsylvania as a respondent; however, because the Commonwealth filed a brief to this court as a respondent, the Commonwealth has submitted itself to our jurisdiction. *Cf. C.E. Williams Co. v. Henry B. Pancoast Co.,* 412 Pa. 166, 194 A.2d 189 (1963).

4. Section 307 provides:

> The board may, if the best interest of a child or children shall so require, at any time order and direct the compensation payable to a child or children, or to a widow or widower on account of any child or children, to be paid to the guardian of such child or children, or, if there be no guardian, to such other person as the board as hereinafter provided may direct. If there be no guardian or committee of any minor, dependent, or insane employee, or dependent, on whose account compensation is payable, the amount payable on account of such minor, dependent, or insane employe, or dependent may be paid to any surviving parent, or such other person as the board may order and direct, and the board may require any person, other than a guardian or committee, to whom it has directed compensation for a minor, dependent, or insane employe, or dependent to be paid, to render, as and when it shall so order, accounts of the receipts and disbursements of such person, and to file with it a satisfactory bond in a sum sufficient to secure the proper application of the moneys received by such person.

appealed to the Board on the basis that Claimant had not met her burden of proving that coal-worker's pneumoconiosis was a substantial contributing factor among the secondary causes in bringing about Decedent's death. The Board agreed, reversing the referee's decision and ruling that Claimant had failed to present sufficient unequivocal medical evidence to support her claim. Claimant appealed to this court and we affirmed the Board. The Pennsylvania Supreme Court granted Claimant's petition for allowance of appeal and ordered that this case be remanded for "further medical testimony in accordance with the standard expressed in *McCloskey v. Workmen's Compensation Appeal Board,* 501 Pa. 93, 460 A.2d 237 (1983); *see also, Musiolowski v. Workmen's Compensation Appeal Board (Harmar Coal Co.),* 524 Pa. 246, 570 A.2d 1319 (1990), J–65–1990, slip opinion filed March 21, 1990." *Stiner v. Workmen's Compensation Appeal Board,* 524 Pa. 468, 468, 573 A.2d 1027, 1027 (1990).

Upon remand, the referee heard additional evidence and made the following pertinent findings of fact with respect to the medical testimony:

2. From Dr. Connelly's deposition, there is no unequivocal testimony found that the primary cause of [Decedent's] demise, carcinoma, was caused by the coal worker's pneumoconiosis.

3. From Dr. Connelly's deposition, there is no unequivocal evidence found that the coal worker's pneumoconiosis has hastened [Decedent's] demise.

4. On cross-examination, Dr. Connelly agreed that he does not hold himself out to the public in the medical field as a pulmonary expert. He is Board certified in Family Practice.

5. Dr. Connelly has treated [Decedent] since approximately 1965, determining in 1976 that he had coal worker's pneumoconiosis, and he considered [Decedent] to be totally disabled as a result. This doctor opines that [Decedent] may have lived longer if he had not had the coal worker's pneumoconiosis. This doctor, on cross-examination, agrees there is no relation between the coal worker's

pneumoconiosis and the esophageal cancer. Overall, Dr. Connelly's opinions are found to be rather speculative as to the proposition that the pneumoconiosis may have either caused the carcinoma or hastened [Decedent's] demise.

6. [Decedent's] widow has testified to the activities of the deceased and his problems prior to his demise. This is found to be credible testimony; however, little probative value is placed on it.

7. Everett F. Oesterling, Jr., M.D., testified for [Employer]. He is Board certified in Anatomical Pathology, Clinical Pathology, and Nuclear Medicine. He has been retained by [Employer] to review forty-one medical documents. He concludes from this review that the carcinoma suffered by [Decedent] was not caused by the pneumoconiosis. [Decedent's] history of smoking could be associated with the carcinoma of the esophagus. He further does not consider the pneumoconiosis played a part in the timing of [Decedent's] death. This doctor's testimony is found to be credible.

8. [Employer] has taken the testimony of Gregory J. Fino, who has also reviewed medical evidence referred to him by [Employer]. This doctor is Board certified in General Internal Medicine. He also is Board certified in the subspecialty of Pulmonary Disease. He has been a "B" reader since February of 1989. Upon review of records supplied to him, this doctor opines that the cause of [Decedent's] death was the esophageal carcinoma. He considers that the coal worker's pneumoconiosis did not play a role in [Decedent's] death or contribute to it. He feels there was no relationship between the carcinoma and the coal worker's pneumoconiosis. He concludes that [Decedent] would have died at the same time, in the same manner, on the same date, had he never suffered from pneumoconiosis. He considers [Decedent's] carcinoma was either idiopathic, or that it occurred as a result of [Decedent's] cigarette smoking. Overall, we find this doctor to be credible and accept his opinion that the coal

worker's pneumoconiosis neither caused [Decedent's] cancer nor accelerated his death.

9. Overall, from the record now established, it is found that [Decedent's] pre-existing pneumoconiosis did not materially contribute to the [Decedent's] demise.

(Referee's Findings of Fact, Nos. 2–9.) Based on these findings, the referee dismissed the fatal claim petition. The Board dismissed Claimant's appeal, finding that competent evidence supported the referee's findings.

■ Claimant now asks us[5] to determine whether the Board erred in affirming the referee where the referee: (1) failed to apply the legal standard applicable to this case under *McCloskey*; (2) accepted Dr. Fino's conclusion that Decedent was not suffering from progressive coal-worker's pneumoconiosis while at the same time accepting as credible the testimony of Claimant that her husband was suffering from worsening symptoms which Dr. Fino admitted was indicative of progressive coal-worker's pneumoconiosis; (3) permitted Employer to relitigate the issue of the existence of coal-worker's pneumoconiosis (through Dr. Oesterling's testimony) when a determination was made in 1976 that Decedent contracted coal-worker's pneumoconiosis; and (4) concluded that no unequivocal evidence exists that coal-worker's pneumoconiosis was a substantial contributing factor in bringing about the Decedent's death.

## I.

■ First, Claimant argues that the referee erred by not applying the *McCloskey* legal standard.

In *McCloskey,* our Supreme Court held:

The medical testimony required under § 301(c)(2) must be unequivocal in establishing the existence of the occupational disease as well as the causal connection between the disease and death.

---

5. Our scope of review is limited to determining whether constitutional rights were violated, errors of law were committed or necessary findings of fact were unsupported by substantial evidence. *Pitkavish v. Workmen's Compensation Appeal Board (Pullman Standard),* 163 Pa.Commonwealth Ct. 185, 640 A.2d 494 (1994).

Therefore, we hold today that where there are multiple causes of death and the immediate cause was non-compensable, the requirements of § 301(c)(2) may be met by a showing with unequivocal medical evidence that the deceased suffered from an occupational disease and that it was a substantial, contributing factor among the secondary causes in bringing about death. Proving merely . . . that the disease was or may have been a contributing factor is inadequate.

*Id.*, 501 Pa. at 100–01, 460 A.2d at 241 (citations omitted).

Claimant argues that Dr. Connelly, Decedent's family physician, presented unequivocal medical testimony to establish a causal connection between Decedent's coal-worker's pneumoconiosis and his death. Moreover, Claimant asserts that Dr. Connelly was in the best position to judge Decedent's condition and therefore Dr. Connelly's testimony should usurp the Employer's medical experts.

 Here, however, the referee clearly found Dr. Oesterling and Dr. Fino more persuasive than Dr. Connelly and premised his decision on their testimony. In *Hills Dep't Store #59 v. Workmen's Compensation Appeal Board (McMullen)*, 166 Pa.Commonwealth Ct. 354, 359, 646 A.2d 1272, 1275 (1994) (emphasis in original) (citations omitted), we held:

In workers' compensation cases, the referee is the ultimate fact-finder, who must determine witness credibility and evidentiary weight. In this role, the referee freely evaluates the evidence offered and can accept or reject any witness' testimony in whole or in part, including that of medical witnesses. . . . While this court can and should consider the competency and sufficiency of evidence presented before a referee, the referee's assessment of witness credibility is not subject to review on appeal. We are precluded, in our appellate role, from reweighing evidence or substituting our credibility determinations for those of the referee; instead, we are limited to determining whether the evidence *believed by the referee* is sufficient to support her findings and conclusions.

Therefore, the referee, and not this court, is empowered to make findings of fact and determine the weight to apply to a witness' testimony and questions of witness credibility. *Id.* Moreover, a review of the record indicates that the medical testimony, accepted as credible by the referee, failed to establish that coal-worker's pneumoconiosis substantially contributed to Decedent's death. Rather, sufficient competent evidence exists to support the referee's findings here.

Accordingly, the referee did not err by concluding that Claimant's evidence did not rise to the level required in *McCloskey* and that Decedent's death was not causally related to his coal-worker's pneumoconiosis.

## II.

Claimant next argues that the referee erred by accepting Dr. Fino's conclusion that Decedent was not suffering from progressive coal-worker's pneumoconiosis while at the same time accepting as credible the testimony of Claimant that her husband suffered from worsening symptoms which Dr. Fino admitted was indicative of progressive coal-worker's pneumoconiosis.

Once again, it is within the exclusive province of the referee, as the ultimate fact finder, to accept or reject certain testimony, determine credibility and weigh the evidence. *Hills Dep't Store # 59.* Here, the referee found both Dr. Fino's and Claimant's testimony credible; however, the referee placed little probative value on Claimant's testimony. (Referee's Finding of Fact, No. 6.) Having given greater weight to Dr. Fino's testimony than to Claimant's testimony, an assessment which we cannot alter on review, the referee did not err in concluding that the coal-worker's pneumoconiosis did not cause or accelerate Decedent's death.

## III.

Claimant also argues that the referee erred by permitting Employer to relitigate the issue of the existence of Decedent's coal-worker's pneumoconiosis (through Dr. Oesterling's testi-

mony) when a judicial determination was made in 1976 that Decedent suffered from coal-worker's pneumoconiosis. *See Hebden v. Workmen's Compensation Appeal Board (Bethenergy Mines)*, 534 Pa. 327, 632 A.2d 1302 (1993). Claimant maintains that Dr. Oesterling makes reference to Decedent's smoking history in an attempt to explain away Employer's liability and relitigate an issue that was resolved in 1976. We disagree.

No dispute exists that Decedent had coal-worker's pneumoconiosis. The only issue in the fatal claim petition was whether that condition substantially contributed to Decedent's death. Relitigation of the fact that Decedent had coal-worker's pneumoconiosis did not occur. Dr. Oesterling testified, *inter alia*, that Decedent's cigarette smoking caused Decedent's carcinoma, not the coal-worker's pneumoconiosis. Therefore, no error was made.

## IV.

Finally, Claimant argues that the referee erred by concluding that no unequivocal medical evidence exists that coal-worker's pneumoconiosis was a substantial contributing cause of Decedent's death. Claimant maintains that such evidence exists in Dr. Connelly's testimony. However, as previously stated, the referee based his determination on the medical evidence presented by three medical experts, evidence which the referee found more credible and probative than that offered by Dr. Connelly. Because that evidence supports the referee's determination, the Board properly affirmed the denial of benefits.

Accordingly, we affirm the Board's decision.

## ORDER

AND NOW, this 1st day of September, 1994, the order of the Workmen's Compensation Appeal Board at Docket # A–92–2522, dated November 3, 1993, is affirmed.