Agnes TAULTON, Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (USX CORPORATION), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 27, 1998.

Decided May 18, 1998.

Joseph J. Cirilano, Pittsburgh, for petitioner.

Martha R. Conley, Pittsburgh, for respondent.

---

Before DOYLE and FLAHERTY, JJ., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

Agnes Taulton (Claimant), surviving spouse of Joseph Taulton (Decedent), appeals from the order of the Workers' Compensation Appeal Board (Board) that affirmed a decision of a workers' compensation judge (WCJ) denying Claimant's fatal claim petition. We affirm.

Claimant averred in her petition that Decedent died on February 16, 1993 of laryngeal cancer/asbestosis. Claimant further averred that Decedent's final illness was caused by his exposure to deleterious fumes and dust, including asbestos, during his many years of employment with USX Corporation (Employer). Employer opposed Claimant's petition, and the matter was heard before a WCJ.

Claimant introduced her own testimony as well as the testimony of a co-worker of Decedent and of Gerrit W.H. Schepers, M.D. Claimant admitted during her testimony that Decedent smoked, drank whiskey, and suffered from diabetes and high blood pressure. She further testified that prior to Decedent's death, Decedent underwent throat surgery and radiation treatment in and around the throat. Decedent's co-worker testified that Decedent had significant exposure to asbestos at Employer's workplace.

Dr. Schepers testified that he examined x-rays and pathology slides relevant to Decedent's case.[1] He stated that Decedent had suffered from squamous cell carcinoma of the larynx. Because of this condition, Decedent had his larynx removed and later underwent a second operation on the neck to remove tumor extensions. Decedent's cancer was very aggressive, however, and Decedent succumbed to the disease in 1993. Dr. Schepers testified that x-rays revealed that Decedent's lungs were free of lung cancer but did show asbestosis. The medical records indicated that Decedent smoked approximately one pack of cigarettes a day for approximately thirty years. Dr. Schepers testified that he

---

1. Neither physician testifying in this matter examined Decedent when he was alive. Their testimony was based upon examination of Decedent's relevant medical records.

did not believe Decedent's smoking history was relevant to Decedent's cancer in the neck because of the nature of Decedent's tumor and because neck cancer would require a more significant smoking history. Dr. Schepers opined that Decedent's cancer was more likely caused by asbestos particles, breathed in at the workplace, lodging in the larynx. On cross-examination, Dr. Schepers admitted that squamous cell carcinoma is frequently associated with cigarette smoking. He further admitted the existence of epidemiological studies that conclude that there is no causal connection between asbestos and laryngeal cancer. Dr. Schepers disagrees with these studies, however.

Employer introduced the testimony of Harvey Mendelow, M.D., who also examined Decedent's pathology slides and medical records, including x-ray reports. Dr. Mendelow testified that it was not possible to state with medical certainty that Decedent's laryngeal and neck cancer was caused by exposure to asbestos. This opinion was based upon Dr. Mendelow's opinion that the relevant medical literature was equivocal concerning any link between asbestos exposure and laryngeal cancer. Dr. Mendelow was not convinced that sufficient research had been conducted to demonstrate that there was a causal relationship between asbestos exposure and laryngeal cancer. He did admit, however, that some experts have opined that there was some link. Dr. Mendelow noted, however, that the medical record did not indicate that Decedent had a significant exposure to asbestos. Dr. Mendelow opined that the cause of Decedent's cancer was "unquestionably" Decedent's long and heavy tobacco exposure, which exposure included cigarettes and cigars, and Decedent's history of alcohol abuse. Dr. Mendelow did not believe that asbestos exposure was a significant contributory factor of Decedent's cancer.

The WCJ accepted as credible the testimony of Dr. Mendelow based upon the doctor's "impressive academic, research and practice credentials as a pathologist." Opinion of WCJ, p. 7. The WCJ found as persuasive Dr. Mendelow's testimony concerning the proposition that at this date reasonable medical experts cannot state with a reasonable degree of medical certainty that there is a causal relationship between asbestos exposure and laryngeal cancer. The WCJ did not, however, find Dr. Scheper's testimony that Decedent's cancer was caused by asbestos exposure to be persuasive. The WCJ stated: "[Dr. Schepers] did not persuasively explain away the significant body of epidemiological studies which have concluded that a link between asbestos exposure and laryngeal cancer cannot be demonstrated.... In addition, the doctor did not persuasively explain why decedent's smoking was not a material contributing factor in the laryngeal cancer." *Id.* Based upon these credibility determinations, the WCJ concluded that Claimant failed to meet her burden of proving that she is entitled to relief on her fatal claim petition. The Board affirmed without taking additional evidence, and this petition for review followed.

This Court's scope of review in workers' compensation cases is limited to determining whether violations of constitutional rights or errors of law were committed, or whether the WCJ's findings of fact are adequately supported by substantial, competent evidence. *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995). The WCJ is the ultimate finder of fact unless the Board takes additional evidence. *Griswold v. Workmen's Compensation Appeal Board (Thompson Maple Products)*, 658 A.2d 449 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 542 Pa. 651, 666 A.2d 1059 (1995). Thus, the authority of the WCJ over questions of credibility, conflicting medical evidence, and evidentiary weight is beyond question. *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.)*, 666 A.2d 383 (Pa.Cmwlth.1995).

Claimant argues that the Board erred by affirming the decision of the WCJ because Claimant's medical evidence is unequivocal in establishing a link between Decedent's last illness and asbestos exposure from the work place, while Employer's medical evidence is allegedly equivocal. This argument is based upon the supposition that Dr. Mendelow testified that he could not absolutely rule out asbestos exposure as a contributing factor to

Decedent's cancer and because he acknowledged that there are studies that conclude that there is a connection between asbestos exposure and laryngeal cancer.

 In a claim petition proceeding, the claimant bears the burden of proving the right to compensation and all elements necessary to support an award. *Somerset Welding & Steel v. Workmen's Compensation Appeal Board (Lee)*, 168 Pa.Cmwlth. 78, 650 A.2d 114 (1994), *petition for allowance of appeal denied*, 540 Pa. 652, 659 A.2d 990 (1995). Where, as here, there is no obvious causal connection between a worker's disability and the alleged cause, the claimant must present unequivocal medical evidence establishing the connection. *Id.* Further, where the immediate cause of a worker's death is noncompensable, the claimant must prove by unequivocal medical evidence that the alleged occupational disease was a substantial contributing factor among the secondary causes in bringing about the death. It is not necessary to show that the occupational disease was the sole or direct cause of death, but it is not sufficient to show that the disease was merely a contributing factor. *Stiner v. Workmen's Compensation Appeal Board (Harmar Coal Co.)*, 167 Pa.Cmwlth. 264, 647 A.2d 981, *petition for allowance of appeal denied*, 539 Pa. 698, 653 A.2d 1235 (1994).

In light of these principles, it is clear that Claimant's argument is misplaced. Claimant argues that Employer did not produce unequivocal medical evidence defeating her claim. The burden, however, is upon Claimant to produce the requisite degree of evidence. Here, Claimant failed to do so because the medical evidence she introduced, although perhaps unequivocal, was found by the WCJ not to be credible. The effect is as if Claimant produced no medical evidence at all. It cannot be stressed too strongly that the WCJ is the ultimate finder of fact. *Sherrod.* Indeed, the WCJ may reject uncontradicted evidence. *Stuck Leasing Company v. Workmen's Compensation Appeal Board (Ziegler)*, 125 Pa.Cmwlth. 237, 557 A.2d 808 (1989), *petition for allowance of appeal denied*, 523 Pa. 652, 567 A.2d 655 (1989).

Moreover, even if we were to follow the logical extension of Claimant's argument that the WCJ may not find unequivocal medical evidence unpersuasive on the basis of opposing equivocal medical evidence, Claimant's argument must fail. Dr. Mendelow's testimony is anything but equivocal. Dr. Mendelow consistently testified that a causal connection between asbestos exposure and laryngeal cancer cannot be made with a reasonable degree of medical certainty. Dr. Mendelow carefully explained why he believed that opposing viewpoints were, in his expert opinion, incorrect, and why the medical record did not support Claimant's theory even if there was evidence of asbestos in Decedent's lungs. Equivocal medical testimony is testimony based upon possibilities. *Somerset Welding.* Dr. Mendelow's medical opinion as to the cause of Decedent's last illness and death was firm and unwavering.

Therefore, the Board did not err by affirming the decision of the WCJ. Accordingly, the Board's order is affirmed.

### ORDER

AND NOW, this 18th day of May, 1998, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.