Thomas RISSI, Petitioner,

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (TONY DEPAUL
& SON), Respondent.

Tony DePaul & Son and PMA
Insurance Company,
Petitioners,

v.

Workers' Compensation Appeal
Board (Rissi), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 27, 2001.
Decided Sept. 20, 2002.
Reargument En Banc Denied
Nov. 4, 2002.

Patricia A. Mattern, Philadelphia, for petitioners.

Dale G. Larrimore, Philadelphia, for respondent.

BEFORE: COLINS, President Judge, LEADBETTER, Judge, and MIRARCHI, JR., Senior Judge.

OPINION BY Judge LEADBETTER.

Employer, Tony DePaul & Son, and claimant, Thomas Rissi, cross-appeal from the order of the Workers' Compensation Appeal Board (Board), which affirmed the decision of the Workers' Compensation Judge (WCJ) denying DePaul's termination petition, directing satisfaction of DePaul's subrogation right in the proceeds of a third party tort judgment and directing DePaul to pay Rissi's outstanding medical expenses. Rissi contends that the tort judgment is not subrogable because the injuries arose from the operation of a street sweeper, which he asserts is a motor vehicle and, therefore, subject to the exclusion from workers' compensation subrogation provided under Section 1720 of the Motor Vehicle Financial Responsibility Law (MVFRL) prior to its amendment in 1993.[1] DePaul contends that the WCJ

1. In 1984 through 1987, when Rissi sustained his injury, Section 1720 of the MVFRL pro-

erred in premising the refusal to terminate benefits and direction to pay medical expenses on health conditions not listed in the notice of compensation payable (NCP). DePaul also asserts that the WCJ's order does not fully enforce its subrogation right to recover expenditures for medical treatment.[2]

DePaul employed Rissi as a member of a road reconstruction and resurfacing crew. From 1984 through April of 1987, Rissi operated a mobile street sweeper, which he drove behind a milling machine that scraped asphalt from the road. During this period, Rissi developed symptoms of chronic airway restriction from inhalation of toxic airborne substances and diminished cognitive capacity, which the credited medical experts opined resulted from exposure to high levels of carbon monoxide emitted from the sweeper. Pursuant to a notice of compensation payable issued in June of 1987, DePaul paid compensation benefits in the amount of $361.00 per week for an injury described as "carbon monoxide poisoning."

In 1990, DePaul petitioned for termination of benefits. While this petition was pending, Rissi obtained a judgment in the amount of $690,857.15 against the manufacturer of the street sweeper. Two months after the entry of this judgment, DePaul and Rissi entered into stipulations (1993 stipulations) agreeing therein that the expenses associated with the tort recovery totaled $302,690.46, and that the accrued workers' compensation lien was $173,878.93. The parties further stipulated that pending the determination of DePaul's subrogation rights,[3] the net recovery on the lien, in the amount of $97,696.07, would be escrowed and Rissi's weekly compensation would immediately decrease to $158.17 during a total grace period of 1,432.07 weeks if DePaul prevailed in its subrogation claim. Otherwise, DePaul would reimburse Rissi for the amount of underpayment for the period benefits were reduced.

Following entry of the 1993 stipulations, DePaul petitioned the WCJ to enforce subrogation. At the 1996 hearing before the WCJ, the parties further stipulated (1996 stipulations) as to facts material to the determination of whether the street sweeper was a "motor vehicle" for the purpose of applying the pre 1993 prohibition against workers' compensation subrogation established in Section 1720 of MVFRL, 75 Pa.C.S. § 1720 (repealed insofar as it relates to workers' compensation payments or other benefits by Section

vided, in pertinent part, as follows: "In actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits...." 75 Pa.C.S. § 1720.

**2.** DePaul contends that Rissi waived any further challenge to the subrogation interest in the tort judgment. There is no merit to this contention. The parties' dispute over whether DePaul has a subrogation interest in the tort judgment has been at the heart of the extensive litigation in this case. Rissi also pressed this issue in a premature interlocutory appeal. *See Rissi v. Workers' Compensation Appeal Bd. (Tony DePaul & Son)*, 720

A.2d 787 (Pa.Cmwlth.1998) (quashing appeal).

**3.** The right to subrogation is provided under Section 319 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 671, which provides in pertinent part:

Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by employer....

25(b) of the Act of July 2, 1993, P.L. 190, No. 44).

Based on the 1996 stipulations, the WCJ found that the street sweeper was a motor vehicle and that DePaul had stipulated to the presence of permanent total disability. Based on these findings, the WCJ denied subrogation and denied the termination petition. On appeal, the Board reversed both rulings, finding no stipulation to permanent disability and finding that the sweeper was not a motor vehicle but "special mobile equipment." The Board remanded to the WCJ for a merits decision on the termination petition. Thereafter, Rissi appealed to our court and we quashed his appeal as interlocutory based on the remand to decide the termination petition. *Rissi v. Workers' Compensation Appeal Bd. (Tony DePaul & Son)*, 720 A.2d 787 (Pa.Cmwlth.1998).

On remand, the WCJ received conflicting medical testimony on the issue of Rissi's recovery and after crediting Rissi's experts over those of DePaul, denied termination. The WCJ directed subrogation substantially in accordance with the parties' 1993 stipulations, and directed DePaul to pay outstanding medical expenses for treatment by Jack Friedman, a licensed psychologist, in connection with Rissi's brain dysfunction.[4] The parties cross-appealed. Rissi contested the finding that the street sweeper is not a motor vehicle and DePaul challenged the refusal to terminate benefits and the direction to pay medical expenses for treatment of cognitive and psychological problems. The

Board affirmed the WCJ and the parties filed the present cross-appeals.

■ The first issue before this court is whether the Board properly determined that because the parties have stipulated that the street sweeper is registered with the Department of Transportation as "special mobile equipment," it is thereby excluded from classification as a "motor vehicle" under the definition provided in Section 102 of the Motor Vehicle Code. The Board based its conclusion on our decision in *Litzelman v. Workmen's Compensation Appeal Board (Pennsylvania Department of Transportation)*, 690 A.2d 1331 (Pa.Cmwlth.1997), where we held that the road roller at issue fell within the definition of "special mobile equipment" in Section 102 of the Vehicle Code and, therefore, could not be considered a "motor vehicle" for purposes of Section 1720 of the MVFRL. Likewise, the street sweeper at issue in the present case is "special mobile equipment." The parties have stipulated to this classification. Moreover, the sweeper falls within the definition, which in pertinent part describes, "[v]ehicles not designed or used primarily for the transportation of persons or property and only incidentally operated or moved over a highway, including but not limited to: ... road construction and maintenance machinery...." 75 Pa.C.S. § 102. Based on the stipulation and the decision in *Litzelman,* the Board properly held that the street sweeper is not a motor vehicle for purposes of determining subrogation rights.[5]

4. The WCJ also directed Rissi to reimburse DePaul, in the amount of $31,596.61, representing the amount DePaul paid pursuant to the 1996 WCJ decision that imposed costs for unreasonable contest of the subrogation issue.

5. Furthermore, we note that in the 1996 stipulations, the parties agreed that during the trial of the third party tort action Rissi introduced evidence of total lost wages and medical expenses, without reduction for amounts paid in workers' compensation benefits. In so doing, Rissi treated the cause of action as not arising out of the maintenance or use of a motor vehicle for purposes of Section 1722 of MVFRL. At the time of Rissi's injury, Section 1722 provided, in pertinent part, "In any action for damages against a tortfeasor ... aris-

Where an employer seeks to terminate benefits after the issuance of a notice of compensation payable, the burden is on the employer to prove that disability has ceased, *Battiste v. Workmen's Comp. Appeal Bd. (Fox Chase Cancer Ctr.)*, 660 A.2d 253, 256 (Pa.Cmwlth.1995), or that any current disability is not related to the work-related injury. *Gumro v. Workmen's Comp. Appeal Bd. (Emerald Mines Corp.)*, 533 Pa. 461, 466, 626 A.2d 94, 97 (1993). In the present case, DePaul asserts that it needed only to prove recovery from the pulmonary disorder. There is no merit to this contention. DePaul accepted liability for both the pulmonary injury as well as the carbon monoxide poisoning.[6] The NPC lists "carbon monoxide poisoning," which the credited medical experts opined caused an organic brain syndrome that manifested with symptoms of permanent cognitive impairment and anxiety/depression. DePaul also accepted liability for the pulmonary injury from the onset of benefit payments; it paid Rissi's medical expenses for treatment of the pulmonary condition. Furthermore, in the 1996 stipulations, DePaul acknowledged that Rissi "developed a pulmonary injury as a result of exposure to certain airborne toxic elements ... while operating a sweeper in the course of his employment...." Consequently, the WCJ properly looked to evidence regarding both pulmonary and brain disorders in determining whether DePaul met its burden of proof to support a termination of benefits. For the same reason, the WCJ properly directed DePaul to pay the outstanding medical expense for treatment of the brain disorder.

The WCJ, as the ultimate factfinder, is the sole arbiter of the credibility and weight of the evidence. *Green v.*

ing out of the maintenance or use of a motor vehicle, a person who is eligible to receive benefits under ... workers' compensation ... shall be precluded from recovering the amount of benefits paid or payable ... under workers' compensation...." 75 Pa.C.S. § 1722. Section 1722 worked in tandem with Section 1720 to place the ultimate burden for payment of compensation benefits on the workers' compensation insurer rather than auto insurance. Under this statutory scheme, the workers' compensation insurer could have no subrogation interest where the claimant was precluded from recovering lost wages and medical expenses from the tortfeasor. *Updike v. Workers' Comp. Appeal Bd. (Yeager Supply, Inc.)*, 740 A.2d 1193, 1194–95 (Pa.Cmwlth.1999).

In the present case, having deemed the sweeper not a motor vehicle under section 1722 and thereby, having recovered damages for lost wages and medical expenses already paid by workers' compensation, Rissi cannot avoid subrogation in this tort recovery by now maintaining that the sweeper is a motor vehicle under Section 1720. To classify the sweeper inconsistently for purposes of applying the statutes would defeat the statutory scheme and provide Rissi with a windfall.

6. DePaul's argument on this point confuses the pulmonary injury, which it apparently accepts as deriving from the carbon monoxide poisoning, with the brain dysfunction, which is the condition directly caused by the carbon monoxide poisoning. The credited experts make clear that the pulmonary symptoms result from chronic inhalation of a variety of airborne toxins and that the carbon monoxide poisoning was an acute condition that caused a chronic brain dysfunction similar to that arising when the brain is deprived for too long of sufficient oxygen. The conditions suffered by Rissi arose at the same time from the same work place insult and, insofar as DePaul paid medical expenses for the pulmonary treatment and acknowledged the carbon monoxide poisoning on the NCP, DePaul accepted liability for both conditions before it filed the termination petition.

The present case is not analogous to the situation in *Commercial Credit Claims v. Workmen's Compensation Appeal Board (Lancaster)*, 556 Pa. 325, 728 A.2d 902 (1991), where the employer accepted liability for a physical injuries sustained in a fall and the claimant later alleged a psychiatric injury stemming from the physical disability.

*Workmen's Comp. Appeal Bd. (Assoc. for Retarded Citizens)*, 670 A.2d 1216, 1221 (Pa.Cmwlth.1996). As such, the WCJ is free to accept or reject the testimony of any witness in whole or in part, including that of medical witnesses. *Id.* We will not reweigh evidence or substitute our judgment for the credibility determination of the WCJ. *Stiner v. Workmen's Comp. Appeal Bd. (Harmar Coal Co.)*, 167 Pa. Cmwlth.264, 647 A.2d 981, 984 (1994). This court's duty is to determine whether the evidence accepted by the WCJ is sufficient to support his decision. *Id.* After review, we conclude that the evidence was sufficient to justify the denial of DePaul's termination petition. There is no merit in DePaul's contention that the WCJ's credibility assessment was flawed because the WCJ mistakenly identified Dr. Promisloff as a witness for DePaul. The fact that Dr. Promisloff, one of the physician's who conducted four independent medical examinations of Rissi on behalf of DePaul, testified on behalf of Rissi in opposition to the termination petition reinforces rather than undercuts the WCJ's assessment of the evidence.

 Finally, DePaul argues that in directing payment of the medical expenses for treatment of Rissi's brain dysfunction, the WCJ erred in failing to specifically direct a "credit on account of the third party recovery." Brief of DePaul and PMA Insurance Co., at p. 14. Although not altogether clear, it appears that DePaul seeks to include the ordered medical payments within the grace period calculations, thus reimbursing Rissi for the fees and costs allocable to the medical expenses rather than their full amount. Of course, this would shorten the grace period during which compensation benefits would be reduced, as any such adjustment would alter only the timing and not the amount of the subrogation paid. Certainly, medical expenses are "workers' compensation payments" that give rise to subrogation rights under Section 319 of the Workers' Compensation Act, *as amended,* 77 P.S. § 671, which grants employer subrogation to compensation paid or payable. *See Dasconio v. Workmen's Comp. Appeal Bd. (Aeronca, Inc.)*, 126 Pa.Cmwlth.206, 559 A.2d 92, 103 (1989). Furthermore, we have held that an employer is entitled to a credit for future medical payments against claimant's third party recovery where that recovery exceeds the compensation thus far paid. *See Deak v. Workmen's Comp. Appeal Bd. (USX Corp.)*, 653 A.2d 52, 54 (Pa.Cmwlth.1994). Hence, the procedure suggested by DePaul is not ordinarily inappropriate. Here, however, although certainly aware of the possibility of future medical expenses, the parties made no such provision when they agreed to the terms for satisfying DePaul's subrogation rights. The WCJ did not err in leaving that agreement unchanged. DePaul's subrogation interest is fully satisfied under the terms to which the parties agreed and are now bound. DePaul remains responsible for the medical expenses arising from treatment of the workplace injury.

For the reasons set forth herein, we affirm.

### ORDER

AND NOW, this 20th day of September, 2002, the order of the Workers' Compensation Appeal Board in the above captioned matter is hereby AFFIRMED.