IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Deborah R. Grooms,             :
             Petitioner      :
                             :
      v.                      :
                             :
City of Philadelphia (Workers'    :
Compensation Appeal Board),     :    No. 42 C.D. 2022
             Respondent    :    Submitted: August 19, 2022


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON        FILED: January 23, 2023


      Deborah R. Grooms (Claimant) petitions for review of the December 22, 2021 order of the Workers' Compensation Appeal Board (Board) affirming the decision of the workers' compensation judge (WCJ) to deny her claim petition. Upon review, we affirm.

## I. Background

      In July 2019, Claimant filed a claim petition alleging that she sustained injury to her back and neck on January 10, 2019 while working for the City of Philadelphia (Employer).[1] WCJ Decision & Order, 3/30/21 (WCJ Decision) at 3,

---

[1] On January 22, 2019, the City of Philadelphia (Employer) filed a notice of denial refusing to accept liability for the alleged work injury. WCJ Decision & Order, 3/30/21 (WCJ Decision) at 3, Certified Record (C.R.) at 21.

Certified Record (C.R.) at 21.[2]   Claimant provided the following testimony in support of her claim at a hearing held in December 2019.   WCJ Decision at 5, Finding of Fact (F.F.) 1, C.R. at 23.

Claimant began working for Employer as a police officer in November 2008. F.F. 1.a. Claimant sustained injury to her neck and back in a non-work-related car accident in July 2018, after which Employer limited Claimant to restricted-duty work. F.F. 1.b. Claimant treated with Dr. Frances Hunter (Dr. Hunter) following the off-duty accident. F.F. 1.e. Claimant was still treating for these injuries at the time of the alleged work injury. F.F. 1.c.

On January 10, 2019, Claimant was performing a restricted-duty assignment for the court liaison unit when an elevator she was using came to a stop with a "jolt" after going "up several floors." F.F. 1.c. (quoting Transcript of Testimony (T.T.), 12/10/19 at 11, Reproduced Record (R.R.) at 11a). Claimant testified that the elevator thereafter dropped and then suddenly stopped, "shift[ing] her] body up and down" in the process. *Id.* (quoting T.T., 12/10/19 at 11, R.R. at 11a). Claimant did not fall to the floor, but immediately felt pain in her neck and back. *Id.* Claimant was unsure of the number of floors the elevator had travelled in either direction. *Id.* Claimant informed her supervisor that she was experiencing some pain following the work incident, and she treated with a panel physician at Worknet Occupational Medicine (Worknet) at around 12:00 p.m. the same day. F.F. 1.h; T.T., 12/10/19 at 16, R.R. at 16a; City of Philadelphia, Heart and Lung Act Board of Arbitration Decision, 12/18/19 at 2, C.R. at 403. Claimant acknowledged that she did not mention the elevator dropping in the accident report, explaining that

---

[2] Citations to the certified record reference the page numbers of the PDF document, as the record is not internally paginated.

2

she was "being very brief at that moment." F.F. 1.d. (quoting T.T., 12/10/19 at 42, R.R. at 42a).

Claimant treated with Dr. Richard Mandel, her primary care doctor, on January 10, 2019 following the work incident. F.F. 1.f. When questioned regarding the absence of any mention of the elevator incident from documentation of this visit, Claimant stated that she "[did not] know what [she] told [the doctor] that day." *Id.* (quoting T.T., 12/10/19 at 33, R.R. at 33a). Claimant was not aware that she consistently identified her pain as either a seven or eight out of ten prior to the work incident during office visits with Dr. Hunter. F.F. 1.e. Claimant had received physical therapy with Dr. Hunter just three days prior to the disputed work accident and conceded that she "might've had a bad day" on January 10, 2019. *Id.*; T.T., 12/10/2019, R.R. at 34a.

Claimant worked on restricted duty until August 2019, at which time Employer provided notice that her ability to work in this capacity was ending and that her continued work as a police officer would become contingent on obtaining medical leave. F.F. 1.g. Despite believing herself unfit to return to full duty, Claimant maintained she was able to continue performing restricted-duty work as a court liaison. *Id.*; F.F. 1.j. Claimant did not request medical leave and has been "out of work" since this time. F.F. 1.g; T.T., 12/10/19 at 19, R.R. at 19a.

Claimant also provided the following testimony by means of telephonic deposition in December 2020.[3] Claimant had treated with Dr. Randall Smith (Dr. R. Smith) and Dr. Richard Kaplan (Dr. Kaplan) but was unsure of the number of times she had been examined by Dr. R. Smith. F.F. 2.f.; *see also* Medical Report at 3, R.R. at 246a. Claimant did not recall complaining to Dr. Hunter of radiating pain

---

[3] Although the hearing was conducted telephonically, the WCJ stated that "Claimant [was] present to testify." T.T., 12/4/20 at 5, C.R. at 142.

in her left leg prior to the work incident. F.F. 2.g. Claimant maintained that she identified her pain as an 8 out of 10 to Dr. Hunter on January 7, 2019 and in the days leading up to January 10, 2019, because those were just bad days and that, presently, her pain is always more than a 10 out of 10. F.F. 2.h.

In June 2020, Dr. R. Smith, a board-certified orthopedist with professional experience in orthopedic surgery and orthopedic pain management, provided testimony by means of a telephonic deposition. F.F. 3.a; Dr. R. Smith Deposition, 6/22/20 at 1, R.R. at 57a.[4] Dr. R. Smith provided diagnoses of herniated discs, radiculopathy[5] of the lumbar spine and cervical, thoracic and lumbar sprain, following an examination of Claimant in May 2019. F.F. 3.b. & 3.e. Dr. R. Smith did not examine Claimant's cervical spine during the May 2019 evaluation. F.F. 3.e. Dr. R. Smith acknowledged that magnetic resonance imaging studies (MRIs) performed on Claimant in July 2018 and March 2019 "showed similar findings," including at the L5-S1 level. Dr. R. Smith Deposition, 6/22/20 at 16, R.R. at 72a; *see also* F.F 3.f. However, Dr. R. Smith opined that a May 2019 electromyography study (EMG) of Claimant indicated L5-S1 radiculopathy, whereas a December 2018 EMG had been within normal limits. F.F. 3.g. Although he reviewed a note from Dr. Mark Avart dated April 2019, Dr. R. Smith did not review any records of Claimant's treatment related to the 2018 car accident. F.F. 3.o; *see also* T.T.,

---

[4] The June 22, 2020 deposition was conducted remotely as a safety precaution due to the COVID-19 pandemic. *See* Dr. R. Smith Deposition, 6/22/20 at 5, Reproduced Record (R.R.) at 61a.

[5] The term "radiculopathy" refers to "irritation of or injury to a spinal nerve root (as from being compressed) that typically causes pain, numbness, or muscle weakness in the part of the body which is supplied with nerves from that root," such as "a pinched nerve of the cervical, thoracic, or lumbar region of the spinal column." MERRIAM-WEBSTER DICTIONARY: *Radiculopathy*, available at https://www.merriam-webster.com/dictionary/radiculopathy (last visited Jan. 20, 2023).

4

12/10/19 at 18, R.R. at 18a. Dr. R. Smith reviewed a note from Worknet, but did not review a note provided by Dr. Nathanial Evans (Dr. Evans) of Concentra Medical Center on January 15, 2019 releasing Claimant to full-duty work. *Id.*; Dr. R. Smith Deposition, 6/22/20 at 35, R.R. at 91a; *see also* Dr. Harvey Smith (Dr. H. Smith) Deposition, 8/25/20 at 27, at R.R. at 146a.

Dr. H. Smith, an orthopedic surgeon with specialized training in spinal surgery, provided the following testimony during a telephonic deposition in August 2020. F.F. 4.a; Dr. H. Smith Deposition, 8/25/20 at 1 R.R. at 120a. In June 2019, Dr. H. Smith performed an independent medical examination of Claimant. F.F. 4.b. Dr. H. Smith reviewed numerous records of treatment and diagnostic studies performed both before and after the elevator incident, including the January 15, 2019 note from Dr. Evans at Concentra. *See* F.F. 4.f-4.g. Dr. H. Smith opined that Claimant did not sustain any injury or exacerbation as a result of the January 10, 2019 elevator incident; rather, Claimant suffered from preexisting lumbar spondylolisthesis[6] and degenerative disc disease. F.F. 4.h. Dr. H. Smith explained that the grade one spondylolisthesis, associated with spondylolysis, noted in Claimant's March 2019 MRI was a chronic finding that was not affected by the January 10, 2019 elevator incident. F.F. 4.i. Further, the EMG findings of acute or chronic L5-S1 left-sided radiculopathy did not correlate with the MRI findings,

---

[6] "Spondylolisthesis is [a] condition in which one vertebral body is slipped forward over another. Spondylolisthesis is most likely caused by an underlying condition of spondylolysis." *SPINE-health: Spondylolisthesis Definition*, available at https://www.spine-health.com/glossary/spondylolisthesis (last visited Jan. 20, 2023).

"Spondylolysis is a condition in which there is a defect in a portion of the spine called the pars interarticularis (a small segment of bone joining the facet joints in the back of the spine)." *SPINE-health: Spondylolysis and Spondylolisthesis*, available at https://www.spine-health.com/conditions/spondylolisthesis/spondylolysis-and-spondylolisthesis (last visited Jan. 20, 2023). Spondylolysis occurs most commonly at level L5-S1 of the spine. *Id.* "[S]pondylolysis is the most common cause of spondylolisthesis." *Id.*

because a spondylolisthesis at L5-S1 would only relate to the L5 nerve, not the S1 nerve. *Id.*

Based on Claimant's demeanor and comportment during the hearing, the WCJ accepted her testimony only to the extent that Claimant may have been trapped inside the elevator on January 10, 2019. F.F. 5. The WCJ rejected as neither credible nor persuasive Claimant's testimony regarding the injuries allegedly sustained during the work incident and her claimed inability to return to work. *Id.* The WCJ acknowledged that Claimant's testimony that she was jolted while riding the elevator at work was not contradicted by any factual testimony or evidence proffered by Employer. F.F. 5.a. However, highlighting Claimant's acknowledgement that she could not recall mentioning to her doctor any injuries allegedly sustained on January 10, 2019, the WCJ reasoned that Claimant's testimony regarding her purported injuries was not consistent with the medical history she had provided to her primary care doctor. F.F. 5b. Further, Claimant's statements regarding the elevator incident were inconsistent and contradictory. F.F. 5.c. For instance, Claimant's testimony that her pain following the January 2019 elevator incident was significantly more debilitating than the pain she experienced as a result of the 2018 car accident was rendered less credible by her admission that she worked on restricted duty until August 2019 and her belief that she would have been able to continue working in this capacity, if permitted by Employer. F.F. 5.d. Moreover, the WCJ determined that Claimant's testimony was not forthright. F.F. 5.e.

The WCJ rejected as neither credible nor persuasive the medical testimony of Dr. R. Smith for the following reasons: Dr. R. Smith's diagnostic conclusions were not consistent with the findings from Claimant's physical

6

examination, there were no objective changes in the MRI diagnostic studies performed before and after the work incident, Dr. R. Smith did not review many of Claimant's medical records pertaining to treatment sought following the 2018 car accident and Dr. R. Smith's opinions were neither medically well reasoned nor logical. F.F. 6.a-6.d. By contrast, the WCJ accepted as "credible, convincing and worthy of belief" the medical opinions of Dr. H. Smith on the following bases: Dr. H. Smith's opinions were supported by the findings from his physical examination of Claimant and by the objective diagnostic studies, Dr. H. Smith was able to reconcile the findings from the EMG study, Dr. H. Smith had the opportunity to review medical records and reports documenting Claimant's treatment following the 2018 car accident and Dr. H. Smith's opinions were medically well reasoned and logical. F.F. 7.d.

Based on the evidentiary record as a whole, the WCJ concluded that Claimant failed to sustain her burden of proving that she suffered a compensable work-related injury on January 10, 2019. F.F. 8; WCJ Decision at 9, Conclusion of Law (C.L.) 2, C.R. at 27. Thus, the WCJ denied Claimant's claim petition. WCJ Decision at 10, C.R. at 28. Further, the WCJ found that Employer had a reasonable basis for its contest. F.F. 9; C.L. 3.

The Board affirmed, and Claimant petitioned this Court for review. *See* Board Opinion & Order, 12/22/21 at 7, C.R. at 45.

## II. Issues

Before this Court,[7] Claimant argues that the Board erred in affirming the WCJ's denial of her claim petition, because her testimony and that of Dr. R.

---

[7] This Court's scope of review is limited to determining whether the WCJ's necessary findings of fact are supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Russell v. Workmen's Comp. Appeal Bd. (Volkswagen*

Smith proved that she "sustained an aggravation of her non-work-related injuries, and potentially, even a new injury[.]" Claimant's Br. at 26. Claimant contends that the WCJ "capriciously disregarded substantial, competent evidence of record in finding that [her] testimony was not credible, and that [she] had not sustained an aggravation injury," maintaining that the May 30, 2019 EMG ordered by Dr. R. Smith revealed nerve damage not evident in Claimant's December 13, 2018 EMG. *Id.* at 26-27 (emphasis omitted).[8]

### III. Discussion

"With respect to a claim petition, the claimant bears the initial burden of proving that [an] injury arose in the course of employment and was related thereto." *Frankiewicz v. Workers' Comp. Appeal Bd. (Kinder Morgan, Inc.)*, 177 A.3d 991, 995 (Pa. Cmwlth. 2017). "In the event there is no obvious causal connection between the alleged disability and the accident, the claimant can only establish the requisite connection by unequivocal medical testimony." *Fotta v. Workmen's Comp. Appeal Bd. (U.S. Steel/USX Corp. Maple Creek Mine)*, 626 A.2d 1144, 1146 (Pa. 1993). A work-related aggravation of a prior non-work-related condition is also compensable under the Workers' Compensation Act (the Act).[9]

---

*of America)*, 550 A.2d 1364 (Pa. Cmwlth. 1988). We must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced therefrom. *Edwards v. Workers' Comp. Appeal Bd. (Epicure Home Care, Inc.)*, 134 A.3d 1156, 1161-62 (Pa. Cmwlth. 2016). The appellate role in a workers' compensation case is not to reweigh the evidence or review the credibility of the witnesses; rather, the Court must simply determine whether, upon consideration of the evidence as a whole, the factual findings have the requisite measure of support in the record. *Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Skirpan)*, 612 A.2d 434 (Pa. 1992).

[8] Employer filed an appellate brief, countering that Claimant's arguments are frivolous and requesting an award of attorney fees and costs. *See* Employer's Br. at 21-27. For the reasons discussed *infra*, we decline Employer's request.

[9] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4; 2501-2710.

*Am. Contracting Enterprises, Inc. v. Workers' Comp. Appeal Bd. (Hurley)*, 789 A.2d 391, 396 (Pa. Cmwlth. 2001).

It is well established that the WCJ, as fact finder, "has exclusive province over questions of credibility and evidentiary weight." *Greenwich Collieries v. Workmen's Comp. Appeal Bd. (Buck)*, 664 A.2d 703, 706 (Pa. Cmwlth. 1995). The WCJ is "free to accept or reject the testimony of any witness, including a medical witness, in whole or in part." *Id.* A credibility determination will be overturned "only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational." *Casne v. Workers' Comp. Appeal Bd. (STAT Couriers, Inc.)*, 962 A.2d 14, 19 (Pa. Cmwlth. 2008). Moreover, "the WCJ is entitled to draw reasonable inferences from the testimony." *Id.* at 20.

### A. Claim Petition

As an initial matter, we observe that Claimant failed to challenge the credibility determinations of the WCJ before the Board and, thus, waived any such challenge. *See* On-line Appeal, 4/15/21 at 2, C.R. at 31; *see also* Section 703(a) of the Administrative Agency Law, 2 Pa.C.S. § 703(a) (a "party may not raise upon appeal any other question not raised before the agency . . . unless allowed by the court upon due cause shown"); Pa.R.A.P. 1551(a) (with regard to review of quasi-judicial orders, "[n]o question shall be heard or considered by the court which was not raised before the government unit"); Pa.R.A.P. 2117(c) (the statement of the case shall confirm that issues were raised or preserved below, and shall include specific supporting references to the record); *Riley v. Workers' Comp. Appeal Bd. (DPW/Norristown State Hosp.)*, 997 A.2d 382, 388 (Pa. Cmwlth. 2010) (citing

Section 111.11(a)(2) of the Board's Regulations, 34 Pa. Code § 111.11(a)(2))[10] ("An issue is waived unless it is preserved at every stage of the proceedings.").[11]

---

[10] Section 111.11(a)(2) of the Board's Regulations provides that "an appeal form submitted to the Board "must contain . . . [a] statement of the particular grounds upon which the appeal is based, including reference to the specific findings of fact which are challenged and the errors of the law which are alleged." 34 Pa. Code § 111.11(a)(2). Further, "[g]eneral allegations which do not specifically bring to the attention of the Board the issues decided are insufficient." *Id.*

[11] We also observe that Claimant omitted any challenge to the WCJ's credibility determinations from her petition for review. *See* Petition for Review, 1/20/22 at 2-3. Although "the omission of an issue from the [general statement of the objections to the order or other determination in a petition for review] shall not be the basis for a finding of waiver if the court is able to address the issue based on the certified record," Pa.R.A.P. 1513(d)(5), we nevertheless deem Claimant's challenge waived for the reasons discussed *supra*.

Further, in the 'Statement of Questions Involved' portion of her appellate brief, Claimant poses the sole question of "[w]hether the WCJ and the [Board] err[ed] as a matter of law and evidence[] in denying [her] [c]laim [p]etition by holding that [she] failed to sustain her burden on the [c]laim [p]etition[.]" Claimant's Br. at 8. Pursuant to Pennsylvania Rule of Appellate Procedure 2116(a),

> [t]he statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail. The statement will be deemed to include every subsidiary question fairly comprised therein. No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.

Pa.R.A.P. 2116(a). None of the issues raised by Claimant concerning credibility or the capricious disregard of evidence are articulated in this portion of her appellate brief. *See Williams v. Workers' Comp. Appeal. Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 141 (Pa. Cmwlth. 2004) (citing Pa.R.A.P. 2116) (holding that the claimant waived her assertion that the WCJ did not render a reasoned decision by "fail[ing] to raise [the] issue anywhere within his [s]tatement of the [q]uestions [p]resented" portion of his appellate brief). We further note Claimant's noncompliance with Appellate Rule 2119(a), which provides that

> [t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Regardless, we conclude that Claimant's attempt to overturn the WCJ's credibility determinations lacks merit. Claimant contends that the WCJ's conclusion that her testimony was not credible constitutes a capricious disregard of substantial competent evidence. *See* Claimant's Br. at 26. This Court has rejected similar arguments conflating these two distinct legal concepts. In *Williams v. Workers' Compensation Appeal Board (USX Corp.-Fairless Works)*, 862 A.2d 137 (Pa. Cmwlth. 2004), we deemed meritless a claimant's assertion that the WCJ capriciously disregarded unrebutted evidence in deeming the testimony of the claimant's treating psychologist not credible, reasoning that a WCJ's "express consideration and rejection [of evidence], by definition, is not capricious disregard." *Williams*, 862 A.2d at 145. Rather, "[a] capricious disregard of evidence occurs only when the fact-finder deliberately ignores relevant, competent evidence." *Id.* Thus, we "emphasize[d] our Supreme Court's pronouncement that, where there is substantial evidence to support an agency's factual findings, and those findings in turn support the conclusions, it should remain a rare instance in which an appellate court would disturb an adjudication based upon the capricious disregard of material, competent evidence." *Id.* (citing *Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe)*, 812 A.2d 478, 490 (Pa. 2002)). Accordingly, we cannot conclude that the WCJ capriciously disregarded substantial competent evidence of record in rejecting Claimant's testimony as not credible.

Claimant further asserts that in deciding credibility, the WCJ erred in overlooking Dr. R. Smith's testimony that Claimant's 2019 EMG study indicated nerve damage which was not evident in the 2018 EMG study. *See* Claimant's Br. at

Pa.R.A.P. 2119(a). Here, the dual subdivision of Claimant's argument does not align with the single question identified in the 'Statement of Questions Involved' portion of her appellate brief. *See id.*

11

30. However, the WCJ deemed credible Dr. H. Smith's explanation that the 2019 EMG findings of acute or chronic L5-S1 left-sided radiculopathy did not correlate with the MRI findings, because a spondylolisthesis at L5-S1 would only relate to the L5 nerve, not the S1 nerve. *See* F.F. 3.g., 4.i & 7.b. Further, the WCJ credited Dr. H. Smith's opinion that the MRI diagnostic studies showed Claimant did not sustain an injury on January 10, 2019, but rather, suffered from preexisting lumbar spondylolisthesis and degenerative disc disease. *See* F.F. 4.h & 7.b. The WCJ also deemed credible Dr. H. Smith's opinion that the grade one spondylolisthesis, associated with spondylolysis, noted in Claimant's March 2019 MRI was a chronic finding that was not affected by the January 10, 2019 elevator incident. *See* F.F. 4.i & 7.b. "[T]he authority of the WCJ over questions of credibility, conflicting medical evidence, and evidentiary weight is beyond question." *Taulton v. Workers' Comp. Appeal Bd. (USX Corp.)*, 713 A.2d 142, 144 (Pa. Cmwlth. 1998).

For these reasons, the Board correctly affirmed the WCJ's determination that Claimant failed to meet her burden of establishing that she sustained a compensable work-related injury. *See Frankiewicz*, 177 A.3d at 995.

## B. Request for Attorney Fees and Costs

Employer maintains that Claimant's arguments are frivolous, as they lack any basis in law or fact. Employer's Br. at 26. Accordingly, Employer requests that this Court award Employer attorney fees and costs totaling $1,000. *Id.* at 27 (citing Pa.R.A.P. 2744[12]).

---

[12] Pursuant to Pennsylvania Rule of Appellate Procedure 2744,

> [a]n appellate court may award as further costs damages as may be just, including . . . a reasonable counsel fee . . . if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory,

12

Here, Claimant's ability to prevail on appeal hinged on overturning the WCJ's credibility determinations. This Court has previously awarded counsel fees for frivolous appeals by *employers* which sought to overturn credibility determinations or reweigh evidence.[13]  *See, e.g.*, *Bryn Mawr Landscaping Co. v. Workers' Comp. Appeal Bd. (Cruz-Tenorio)*, 219 A.3d 1244, 1256-57 (Pa. Cmwlth. 2019) (awarding reasonable counsel fees to the claimant where the employer's frivolous appeal "consisted solely of a challenge to the reasoning underlying the WCJ's determinations of credibility and evidentiary weight"); *Newcomer Prods. v. Workers' Comp. Appeal Bd. (Irvin)*, 826 A.2d 69, 76 (Pa. Cmwlth. 2003) (deeming the employer's appeal frivolous and awarding the claimant counsel fees, where the "[e]mployer's appeal consisted of nothing more than an invitation to this Court to reassess the credibility of the witnesses and the weight to be accorded to the evidence").  However, this Court cannot impose counsel fees on workers' compensation *claimants* under such circumstances. *See Phillips v. Workmen's Comp. Appeal Bd. (Century Steel)*, 721 A.2d 1091, 1094 (Pa. 1999) (citing *Callahan v. Workmen's Comp. Appeal Bd. (Bethlehem Steel Corp.)*, 571 A.2d 1108, 1111 (Pa. Cmwlth. 1990)) (explaining that awarding fees to an employer would "inhibit the employee from pursuing an administrative action in his own behalf for fear he would be assessed heavy costs if he lost," and reasoning that "the statute's purpose [was]

---

obdurate or vexatious. The appellate court may remand the case to the trial court to determine the amount of damages authorized by this rule.

Pa.R.A.P. 2744.

[13] Moreover, as noted above, Claimant failed to raise before the Board and, thus, waived any challenge to the WCJ's credibility determinations. *See supra* pages 9-10 and notes 10-11.

clearly to further the interests of claimants"). Thus, we are unable to grant Employer's request for attorney fees and costs. *See id.*

## IV. Conclusion

Claimant failed to raise credibility challenges before the Board and, accordingly, they are waived. Further, Claimant failed to establish that the WCJ's credibility determinations were "arbitrary and capricious[,] . . . fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render [them] irrational." *Casne*, 962 A.2d at 19. For these reasons, we discern no error in the Board's affirmance of the denial of her claim petition.

Accordingly, we affirm the Board's order.

_____
CHRISTINE FIZZANO CANNON, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Deborah R. Grooms,                      :
                  Petitioner      :
                      :
        v.                  :
                      :
City of Philadelphia (Workers'   :
Compensation Appeal Board),   :   No. 42 C.D. 2022
               Respondent   :

O R D E R

AND NOW, this 23rd day of January, 2023, the December 22, 2021 order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge