Tara BARTHOLETTI, Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (SCHOOL DISTRICT OF PHILADELPHIA), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 20, 2007.

Decided July 10, 2007.

Julian C. Wessell, III, Philadelphia, for petitioner.

Kenneth R. Manyin, Philadelphia, for respondent.

BEFORE: McGINLEY, Judge and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge McGINLEY.

Tara Bartholetti (Claimant) petitions for review of the order of the Workers' Compensation Appeal Board (Board) that modified the decision of the Workers' Compensation Judge (WCJ). The Board found that Claimant was entitled only to medical benefits for her injuries from January 22 through September 4, 2003, and not entitled to wage loss benefits. The WCJ's decision was affirmed in all other respects.

Claimant was employed as an elementary school teacher at Delplaine–McDaniel Elementary School in the Philadelphia School District (Employer) since 2000. On January 21, 2003, Claimant was punched in the shoulder and bitten on the arm when she attempted to stop a fight between two fourth grade students under her supervision. On February 19, 2003, Claimant filed a claim petition and alleged that on Janu-

ary 21, 2003, she suffered "severe anxiety and depression from the abnormal working conditions" as a result of the altercation. Claim Petition, February 19, 2003, at 2–3; Reproduced Record (R.R.) at 13a. Claimant requested workers' compensation benefits and payment of medical bills from January 22, 2003, through September 4, 2003. Employer denied all allegations.

At hearing, Claimant testified that on January 21, 2003, a fight erupted between two fourth grade boys. Notes of Testimony July 1, 2003, (N.T.) at 18; R.R. at 20a. Claimant was bitten on her left arm and punched in the left shoulder as she attempted to break up the fight. N.T. at 16–19; R.R. at 20a. Claimant treated at Methodist Hospital immediately after the incident, and an unnamed physician confirmed that Claimant sustained a bite to her arm. N.T. at 28; R.R at 25a. Blood tests were required to determine whether Claimant contracted HIV or hepatitis. N.T. at 28; R.R. at 25a. Claimant returned to work the next day on January 22, 2003, and "felt like I was crazy ... I felt inadequate ... [t]hat I couldn't do my job." N.T. at 36.[1] Claimant worked for a half day on January 22, 2003 and visited Dr. Thomas DelGiorno (Dr. DelGiorno), her family doctor. N.T. at 31.[2] Dr. DelGiorno advised her to take sick leave from work, and referred her to Patricia Mikols, PhD. (Dr. Mikols) a psychologist at Evergreen Counseling for psychological counseling. N.T. at 32; R.R. at 26a. Dr. Mikols referred Claimant to Dr. Elizabeth Levy (Dr. Levy), a psychiatrist, for medication. N.T. at 32; R.R. at 26a.

Claimant submitted the February 12, 2003, medical report of her psychologist, Dr. Mikols[3]. In the psychological evalua-

---

1. This page is not included in the Reproduced Record.

2. This page is not included in the Reproduced Record.

3. Claimant also submitted her Intake Report

tion, Dr. Mikols diagnosed Claimant with "Major Depression, single episode, acute." Report of Patricia Mikols, Ph.D, February 12, 2003, (Dr. Mikols Report) at 1; R.R. at 18a. Dr. Mikols met with Claimant on January 27, 2003, January 31, 2003, February 3, 2003, and February 11, 2003, and planned to continue treatment in weekly sessions. Dr. Mikols Report at 1; R.R. at 18a. Because Claimant's crying spells and anxiety did not decrease after she started treatment, her medication was increased to Zoloft 75 mg. Dr. Mikols Report at 1; R.R. at 18a. Dr. Mikols's report also stated that Claimant had symptoms of post-traumatic stress syndrome after an earlier incident at the same school when Claimant returned to her classroom and found human feces on the carpet. Dr. Mikols Report at 1; R.R. at 18a. Dr. Mikols noted "[Claimant] reports intrusive memories of [the earlier incident] as well as flashbacks of the student fight she intervened in and in which a student bit her on the arm.... [Claimant] is frightened to return to her school to work or even to enter the building." Dr. Mikols Report at 1; R.R. at 18a. Dr. Mikols stated "[Claimant] will not be able to return to work for 60–90 days [4]." Dr. Mikols Report at 1; R.R. at 18a.

Employer submitted the Occupational Medicine Treatment Intake Form which was completed by Claimant on January 21, 2003. The form indicated that Claimant reported she was "punched in the left

shoulder and either bitten or pinched on the left forearm." Intake Form, January 21, 2003, at 1.[5]

The WCJ awarded Claimant both wage loss and medical benefits for the period of time between January 22, 2003, and September 5, 2003, and made the following relevant findings of fact and conclusions of law:

5. Claimant testified by trial deposition on July 1, 2003 and in court on March 16, 2004. Her testimony is uncontroverted and is credible.

. . . .

21. Claimant submitted the February 21, 2003 report of Patricia Mikols, PhD., with a copy of the January 27, 2003 intake form ... [t]here was no evidence of prior psychiatric history ... Dr. Mikols diagnosed [M]ajor [D]epression, single episode, acute with symptoms of post-traumatic stress relating to the incident in school on January 21, 2003 ... Claimant manifested symptoms of post-traumatic stress also related to a previous incident at the same school in 2002 ...

. . . .

*Conclusions of Law*

1. Claimant met her burden of proof that she was injured on January 21, 2003 while working for this Employer and, as a result, was diagnosed with [M]ajor [D]epression, single episode, acute as

from Evergreen Counseling which stated that Claimant's symptoms on January 27, 2003, were anxiety, acute depression, decreased sleep, decreased appetite, headaches, and crying spells. Intake Report, January 27, 2003, (I.R.) at 1; R.R. at 19a. The report states the symptoms were due to the incident where Claimant was assaulted. I.R. at 1; R.R.19a. The treatment plan for Claimant included counseling, desensitization, and psychiatric consultation for medications. I.R. at 1; R.R. at 19a.

4. The 60–90 day period is not critical to our review because the WCJ found Claimant returned to her time of injury duties on September 5, 2003, and was fully recovered at that time.

5. Form not included in the Reproduced Record.

well as with post-traumatic stress and was disabled as of the afternoon of January 22, 2003 and ongoing, for which she is entitled to receive workers' compensation benefits based on her average weekly wage of $626.88.

2. As of September 5, 2003, Claimant returned to work with no loss of wages and her testimony is credible that she no longer had any problems and was fully recovered from the work injury.

. . . .

4. The treatment Claimant received after this work injury at the comp clinic, with Dr. DelGiorno, Dr. Mikols, and Dr. Levy was related to the work injury of January 21, 2003. Claimant also suffered a physical injury on January 21, 2003 in the nature of a bite on her left forearm.

. . . .

6. Claimant established her work-related disability as of January 22, 2003 and ongoing and Employer submitted no evidence to rebut that work related disability until Claimant testified in court on March 16, 2004, stating that she was no longer having any problems. Her testimony is credible that as of September 5, 2003, she was fully recovered from the work injury.

WCJ's Decision, April 5, 2005, Findings of Fact (F.F.) Nos. 5, 21 and Conclusions of Law (C.L.) Nos. 1, 2, 4, 6 at 1, 4–5; R.R. at 13a, 16a–17a. The WCJ granted the claim petition.

The Board reversed the award of wage loss benefits. The Board stated:

Here, the disabling nature of Claimant's psychological injury was not obvious, and medical evidence was necessary to prove that element of her claim. Dr. Mikols did not render an opinion that Claimant's psychic injury was disabling, and Claimant did not offer any other medical evidence on this point. Accordingly, Claimant failed to prove the disabling nature of her work injuries. Therefore, we modify [WCJ's] Decision to reflect that [Claimant] is only entitled to medical benefits for her work injuries, and is not entitled to wage loss benefits.

Board's Decision, September 28, 2006, at 7; R.R. at 9a.

On appeal, Claimant contends [6] that the Board erred when it modified the award of wage loss benefits on the ground Claimant did not establish that she was disabled as a result of her work injury. Claimant contends the Board erred as a matter of law and essentially engaged in factfinding when it rejected the WCJ's acceptance of Claimant's testimony and psychological evidence concerning causation.

■ The present controversy involves an alleged physical/mental injury. To substantiate a physical/mental injury claim, the psychological injury must be the result of a triggering physical event and the injury must arise in the course of employment. *Washington Steel Co. v. Workmen's Compensation Appeal Board (Argo)*, 167 Pa. Cmwlth.294, 647 A.2d 996 (1994), *petition for allowance of appeal denied*, 540 Pa. 590, 655 A.2d 519 (1995). If the casual relationship between the claimant's work and the injury is not clear, the claimant must provide unequivocal medical testimony [7] to establish the necessary relationship.

---

6. This Court's review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether constitutional rights were violated. *Vinglinsky v. Workmen's Compensation Appeal Board*

*(Penn Installation)*, 139 Pa.Cmwlth.15, 589 A.2d 291 (1991).

7. "Unequivocal medical testimony" is a medical expert's testimony that in his professional opinion the claimant's "condition ... did [in

747

Holy Family College v. Workmen's Compensation Appeal Board (kycej), 84 Pa. Cmwlth.109, 479 A.2d 24 (1984).

■ The WCJ is the sole fact-finder, and if the facts found by the WCJ rest on competent evidence, they may not be disturbed. *Universal Cyclops Steel Corp. v. Workmen's Compensation Appeal Board (Krawczynski)*, 9 Pa.Cmwlth.176, 305 A.2d 757 (1973). A WCJ is free to accept or reject ... the testimony of ... medical witnesses. *Greenwich Collieries v. Workmen's Compensation Appeal Board. (Buck)*, 664 A.2d 703 (Pa.Cmwlth.1995). The Board may review the nature of the evidence submitted to determine if it is sufficient to state a claim, however reinterpretation of the evidence by the Board is in excess of its scope of review. The Commonwealth Court previously held:

[W]e are to draw all reasonable inferences which are deducible from the record in support of the fact finder's decision in favor of the prevailing party. [Citation Omitted]. Accordingly, to the extent that the reasons proffered by the WCJ are susceptible of the interpretation in support of his decision as well as an interpretation against his decision, we are required to accept the interpretation which supports the WCJ's Decision.

*Cerasaro v. WCAB (Pocono Mt. Medical)* 717 A.2d 1111 (Pa.Cmwlth.1998)

Additionally, the Supreme Court of Pennsylvania held in *Lehigh County Vo-Tech v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995): "[T]he Workmen's Compensation Appeal Board ... must simply determine whether, upon consideration of the evidence as a whole, [WCJ]'s findings have the requisite measure of support in the

fact] come from the work experience." *Philadelphia College of Osteopathic Medicine v.*

record ....findings of fact can be overturned only if they are arbitrary and capricious." [Citations Omitted]. Here, the Court finds the WCJ did not act arbitrarily or capriciously.

In *District of Philadelphia v. Workers' Compensation Board (Lanier)* 727 A.2d 1171 (Pa.Cmwlth.1999), which held that medical evidence was necessary to prove disability was casually related to the work injury, Wileater Lanier's (Lanier) physician testified that he was "intentionally being nebulous" because he did not know whether Lanier could function at work. *Id.* at 1173. Because the medical expert had not testified that Lanier's work injury prohibited her from returning to work, this Court held the medical evidence introduced was insufficient and equivocal. *Id.* at 1174. In the present case, Dr. Mikols's report clearly stated that Claimant was injured at work, and suffered from depression as a result. *Lanier* is factually inapposite.

■ The WCJ found the Claimant's testimony and her medical evidence credible. The WCJ also found that the psychological evidence established the Claimant suffered "Major Depression, single episode, acute" as a result of the physical injury she suffered at work. The credited psychological opinion was clear and unequivocal proof her disability was caused by a work injury. Employer presented no evidence to the contrary. The Claimant shouldered her burden, and the Board erred in reaching a contrary conclusion.

Because the WCJ's determination that Claimant was entitled to disability benefits was supported by substantial evidence and in conformity with the Workers' Compensation Act[8], the award of the WCJ is reinstated.

*Workmen's Compensation Appeal Board*, 77 Pa.Cmwlth. 202, 465 A.2d 132, 134 (1983).

8. Act of June 2, 1915, P.L. 736, *as amended,*

748

Employer asserts that Claimant should not receive any benefits after June 27, 2003, because that was the last pay period for the school year, and she was not entitled to any benefits after the school year ended. Claimant testified on cross-examination that she was scheduled to receive her regular pay through June 27, 2003, but she was paid all summer because she elected to pay into the system earlier in the year.[9]

Employer has not provided any support in the Act or case law for its proposition that Claimant should not receive any benefits after June 27, 2003, because that may have been the last time she would have received her regular salary had she been able to work. The weeks in the summer when Claimant would not receive a salary

would be reflected in Claimant's average weekly wage. Employer submitted a statement of wages which indicated Claimant received $32,398.00 per year which divided by fifty-two weeks yielded an average weekly wage of $626.88 and weekly compensation benefits of $417.92. Even if Claimant did not earn anything in the summer, her annual income remained the same, and, consequently, so would her average weekly wage. Further, there is nothing in the record to indicate that Claimant did not remain disabled until the WCJ properly determined she was fully recovered when she returned to work in September 2003.

Employer also asserts entitlement to a credit[10] for sick pay received by Claimant

77 P.S. §§ 1–1041.4, 2501–2626.

9. Kenneth R. Manyin, Employer's attorney, questioned Claimant regarding her pay schedule:

Q. And your regular pay period up until the summer ended on June 27, 2003, does that sound right?
A. I didn't get paid from February 14.
Q. I understand that, but would your pay period have ended, if you know, about June 27, 2003, say this didn't happened [sic]; would you have continued to work?
A. No, I get paid all summer long.
Q. Okay. I just wanted to understand if there was say a difference during the summer. Basically, you paid into that through the year; is that right?
A. Yes.
Q. So, you're calling it your regular pay; would that have gone up until June 27?
A. If that's the last day of school, yes.
Q. Now, did you get that money during the summer, correct?
A. Only what I pay in it.
Q. From September to December?
A. September, I think it was two checks.
Notes of Testimony, March 16, 2004, (N.T. 3/16) at 8–9.

10. Section 204(a) of the Act, 77 P.S. § 71(a), provides in pertinent part:
No agreement, composition or release of damages made before the date of injury

shall be valid or shall bar a claim for damages resulting therefrom; and any such agreement is declared to be against the public policy of this Commonwealth. The receipt of benefits from any association, society, or fund shall not bar the recovery of damages by action at law, nor the recovery of compensation under article three hereof; and any release executed in consideration of such benefits shall be void: Provided, however, That if the employe receives unemployment compensation benefits, such amount or amounts so received shall be credited as against the amount of the award made under the provisions of sections 108 and 306, except for benefits payable under section 306(c) or 307. Fifty per centum of the benefits commonly characterized as 'old age' benefits under the Social Security Act ... shall also be credited against the amount of the payments made under sections 108 and 306, except for benefits payable under section 306(c): Provided, however, That the Social Security offset shall not apply if old age Social Security benefits were received prior to the compensable injury. The severance benefits paid by the employer directly liable for the payment of compensation and the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe shall also be credited

from January 22, 2003, through February 14, 2003. On cross-examination, Claimant testified that she received her regular salary through February 14, 2003, by using her accumulated sick days.

In *Temple v. Pennsylvania Department of Highways*, 445 Pa. 539, 285 A.2d 137 (1971), our Pennsylvania Supreme Court visited this same issue. In *Temple*, David L. Temple (Temple) suffered a work-related injury in the course of his employment with the Pennsylvania Department of Highways (DOH). After the injury, DOH's insurer denied liability. Before any hearing on the controversy, Temple was offered sick leave wages, which he was entitled to under the terms of his employment contract. He used forty-one and one-half days of sick leave. It was later determined that Temple was eligible for partial disability benefits. DOH sought a credit for the sick leave Temple received. *Temple*, 445 Pa. at 540–542, 285 A.2d at 138–139. Our Pennsylvania Supreme Court affirmed the denial of the credit request:

> It must be remembered that this employe gave up his available sick leave pay for the 41½ day period, so that had he returned to his duties at the end of that period, under the insurance carrier's view in this case it would have paid him nothing for his disability. Yet, claimant [Temple] would have lost his sick leave which would otherwise have been available to him for none [sic] work-incurred disabilities which may have occurred thereafter. We have no hesitation in holding that such a construction of the workmen's compensation laws was never intended by the Legislature . . . .

*Temple*, 445 Pa. at 544, 285 A.2d at 140.

■ The present case is very similar in that Claimant used her sick leave for the initial portion of her disability and, as did the employee in *Temple*, Employer seeks credit for those payments. Under *Temple*, Employer is not entitled to credit as a matter of law. Employer makes no reference to the Act or case law to support its claim set forth in one sentence in its brief.

Accordingly, this Court affirms the award of medical benefits and reverses the denial of wage loss benefits. The decision of the WCJ is reinstated.

### ORDER

AND NOW, this 10th day of July, 2007, the order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed in regard to the award of medical benefits and reversed as to the denial of wage loss benefits. The decision of the Workers' Compensation Judge is reinstated.

against the amount of the award made under sections 108 and 306, except for benefits payable under section 306(c). . . . (Citation omitted).