**James MORELLA, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (MAYFIELD FOUNDRY, INC., and LAUNDRY OWNERS MUTUAL LIAB.), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 31, 2007.

Decided Nov. 5, 2007.

Mitchell H. Dugan, Pittsburgh, for petitioner.

Ralph J. Saunders, Jr., Pittsburgh, for respondent.

BEFORE: McGINLEY, Judge, PELLEGRINI, Judge, and LEAVITT, Judge.

OPINION BY Judge PELLEGRINI.*

James Morella (Claimant) appeals from an order of the Workers' Compensation Appeal Board (Board) affirming a decision of the Workers' Compensation Judge (WCJ) granting Mayfield Foundry, Inc. and Laundry Owners Mutual Liability's (collectively, Employer) modification petition reducing his workers' compensation benefits but modifying the award to reflect that he had the earning power of full-time employment.[1]

On September 26, 1998, Claimant, employed as a machinist by Employer, sustained a work-related injury to his lower back. Employer accepted the injury by

---

* This opinion was reassigned to the author on September 18, 2007.

1. The Board also concluded that the WCJ's decision was reasoned and supported by substantial evidence, and it modified the WCJ's decision to award Claimant's counsel an ongoing attorney's fee as provided by the designated fee agreement. However, neither party has challenged these holdings, and they are not currently before us in the instant appeal.

way of a notice of compensation payable, and Claimant received benefits under the Workers' Compensation Act (Act)[2] of $294.65 based on his average weekly wage of $441.98. Employer filed a modification petition claiming that as of April 9, 2004, full-time work was available to Claimant with no loss of earning power. Claimant filed an answer denying the material allegations of the modification petition, and the matter was assigned to a WCJ.

To establish that Claimant's injury did not make him incapable of working, Richard Kasdan, M.D. (Dr. Kasdan), a board certified neurologist who evaluated Claimant on two occasions after he had undergone back surgery, testified that during the first visit on November 19, 2001, Claimant complained of severe pain in his back which radiated into his left thigh and numbness in his left foot. He stated that based on an EMG, Claimant had a right S–1 chronic nerve root irritation. At that time, Dr. Kasdan opined that Claimant could only perform light-duty work with a 20–pound weight limit. With regard to Claimant's second visit on December 9, 2003, Dr. Kasdan found that his condition was improving in that he had full range of motion in his back, although it was performed slowly; he had improved straight leg raising results; and his leg strength was normal. Despite the improvements, Claimant was still diagnosed with post L5–S1 laminectomy with chronic low back pain. After the second visit, Dr. Kasdan affirmed that Claimant was still able to perform light-duty work on a full-time basis. Specifically, Dr. Kasdan testified as follows:

> Q: Based on your physical examination as well as your review of the medical records, did you have an opinion, within a reasonable degree of medical certainty, as to whether or not Mr. Morella was

able to return to work in some capacity on December 9, 2003?

> A: Yes.

> Q: And what was your opinion?

> A: That he could perform a light duty job 8 hours a day, 40 hours a week that limited his lifting capacity to 20 pounds but without significant limitation of sitting, standing, et cetera.

> Q: Is that opinion stated within a reasonable degree of medical certainty?

> A: Yes, it is.

> Q: Would he have been able to perform work of that nature on a full or part-time basis?

> A: Full time.

(Reproduced Record at 266–267.)

Employer also offered the testimony of James DeMartino (DeMartino), a rehabilitation consultant found by the Department of Labor and Industry to qualify as an expert to conduct interviews assessing earning power under the Act. DeMartino stated that he conducted a vocational interview with Claimant on June 30, 2003, in which he evaluated Claimant's transferable skills, education and employment history, and then began a job search for positions within a 25–mile radius of Claimant's residence. In conducting the search, DeMartino was aware that Claimant was capable of performing full-time, light-duty work based on Dr. Kasdan's November 2001 examination. DeMartino testified that he performed an earning power assessment and labor market survey wherein he found open and available positions in Claimant's geographical area that were vocationally suitable for him and were within his medical restrictions. He stated that the mean salary wage available to Claimant was $303.89.

---

**2.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2626.

In opposition, Claimant testified that he had participated in a vocational interview and based on the request of his attorney, he applied to the positions listed in the labor market survey. However, he did not receive job offers from these positions. Claimant stated that he did not believe he could have performed these jobs due to his inability to sit or stand for long periods. He explained that he was inexperienced in telemarketing or sales-type jobs, but was familiar with restaurant jobs and knew that such jobs required workers to be on their feet for extended periods and to lift and carry objects. Because of his condition, Claimant felt that he could not remain in any one position for an extended period, and performing driving jobs would be problematic because he would have difficulty maintaining a seated position.

On behalf of Claimant, Gerard Myers, D.O. (Dr. Myers), who was board certified in anesthesiology and practiced in pain management, testified that he first examined Claimant in December 1998 and continued to treat his pain since that time. Dr. Myers opined that Claimant was incapable of performing light-duty work, and the jobs listed in the earning power assessment would not be suitable for him. Dr. Myers expressed that driving would be an issue for Claimant; he would be unable to perform restaurant and sales-type jobs; working as a cashier might have involved increased hours; and a telemarketing position was problematic because the amount of sitting required could aggravate Claimant's low back pain. Dr. Myers also testified that Claimant had reached the maximum level of medical improvement and insisted that he remain totally disabled. On cross-examination, though, he stated that he would not prevent Claimant from accepting one of the positions in the earning power assessment.

Determining the medical opinion of Dr. Kasdan more credible than Dr. Myers, the WCJ found that Claimant was capable of work and granted its petition. She reasoned that Dr. Myers repetitively asserted that Claimant was totally disabled and focused on potential workplace concerns that were no more dangerous than areas around the home, and that DeMartino credibly testified about Claimant's capabilities and the type of employment that was available to him. The WCJ also found that Claimant exhibited credible issues with pain, but tended to exaggerate his symptoms and noted "significant doubts regarding the claimant's zeal in presenting himself as a likely employee." (WCJ's July 18, 2005 Decision at 5.) She stated that because Claimant had been removed from the workforce for such a long period, it would be difficult for him to return to any kind of employment on a full-time basis. Based on this rationale, the WCJ ultimately found that Claimant was capable of only part-time employment giving him an earning power of $151.95 per week [3] as of April 9, 2004. This determination entitled Claimant to a partial disability rate of $193.35.

Employer appealed to the Board arguing that the WCJ erred by modifying Claimant's benefits because the evidence that the WCJ found credible demonstrated that Claimant was capable of working full-time. Agreeing with Employer, the Board found that because the WCJ found Dr. Kasdan's testimony that Claimant could return to full-time, light-duty employment more credible than that of Dr. Myers, the WCJ's finding that Claimant was only capable of working 20 hours per week was inconsistent with that finding and not sup-

---

3. The earning power amount of $151.95, as determined by the WCJ, was one-half the amount of $303.89 found by DeMartino if Claimant were to work a 40–hour week.

ported by substantial evidence. It modified the WCJ's decision to reflect Claimant's earning power of $303.89 per week based on his ability to perform full-time, light-duty work,[4] and this appeal by Claimant followed.[5]

 Claimant contends that the Board erred in finding that there was no substantial evidence to support the WCJ's finding that Claimant could only work part-time. Even though the WCJ found Dr. Kasdan to be more credible than Dr. Myers, Claimant argues that her conclusion that he was capable of only working part-time implicitly rejected Dr. Kasdan's opinion that he could work on a full-time basis.[6]

 In finding Dr. Kasdan more credible than Dr. Myers, the WCJ never indicated that she did not accept his opinion that Claimant could engage in full-time, light-duty employment. Moreover, there is no testimony in the record even suggesting that part-time work was necessary as part of some work hardening regime—the

only testimony being Dr. Kasdan's opinion that Claimant could work full-time and Dr. Meyer's testimony that he could work not at all. Based on the facts as found by the WCJ, the only substantial evidence was that Claimant could work full-time, and it was within the Board's province to make the WCJ's findings conform to the award.[7]

Accordingly, the order of the Board is affirmed.

## ORDER

AND NOW, this *5th* day of *November,* 2007, the order of the Workers' Compensation Appeal Board, No. A05–1954, is affirmed.

## DISSENTING OPINION BY Judge McGINLEY.

I respectfully dissent to the majority's conclusion that "[b]ased on the facts as found by the WCJ, the only substantial evidence was that Claimant could work full-time, and it was within the Board's

---

4. The net effect of this determination was to reduce Claimant's workers' compensation benefits to $92.06 ($441.98–$303.89 = $138.09 divided by 2/3 = $92.06). (Board's December 19, 2006 Decision at 8.)

5. Our scope of review in a workers' compensation appeal is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *City of Scranton v. Workers' Compensation Appeal Board (Roche),* 909 A.2d 485 (Pa.Cmwlth.2006).

6. In a workers' compensation proceeding, the WCJ is the ultimate fact-finder and the sole arbiter of the credibility and weight of the evidence. *Rissi v. Workers' Compensation Appeal Board (Tony DePaul & Son),* 808 A.2d 274 (Pa.Cmwlth.2002). If the facts as found by the WCJ rest on competent evidence, they may not be disturbed. *Bartholetti v. Workers' Compensation Appeal Board (School District of Philadelphia),* 927 A.2d 743 (Pa.Cmwlth.

2007). Moreover, the WCJ is free to accept or reject the expert testimony of any witness, including a medical witness, in whole or in part. *Riggle v. Workers' Compensation Appeal Board (Precision Marshall Steel Co.),* 890 A.2d 50 (Pa.Cmwlth.2006). On appeal, the Board may review the nature of the evidence submitted to determine if it is sufficient to state a claim; however, reinterpretation of the evidence by the Board is in excess of its scope of review. *Bartholetti.* Also, the Board must determine whether the WCJ's findings have the requisite measure of support in the record, and findings of fact can only be overturned if they are arbitrary or capricious. *Lehigh County Vo–Tech v. Workmen's Compensation Appeal Board (Wolfe),* 539 Pa. 322, 652 A.2d 797 (1995).

7. The Board's standard of review is limited to determining whether there is substantial evidence to support a finding of the WCJ. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan),* 531 Pa. 287, 612 A.2d 434 (1992).

province to make the WCJ's findings conform to the award." (footnote omitted).

In the present matter, the WCJ found that Claimant was capable of returning only to *part-time* work of twenty hours per week. *See* WCJ's Findings of Fact No. 1 at 6. Upon review of the record the Board modified the WCJ's award and reduced Claimant's compensation rate to reflect Claimant's ability to perform light duty work *full time.* I believe that both the WCJ and the Board erred for the following reasons.

First, the WCJ's conclusion that Claimant was only capable of working 20 hours per week is inconsistent with the testimony of Dr. Kasdan which the WCJ found credible. Dr. Kasdan stated the following:

> Q: Based on your physical examination as well as your review of the medical records, did you have an opinion, within a reasonable degree of medical certainty, as to whether or not Mr. Morella [Claimant] was able to return to work in some capacity on December 9, 2003?
>
> A: Yes.
>
> Q: And what was your opinion?
>
> A: That he could perform a light-duty job 8 hours a day, 40 hours a week that limited his lifting capacity to 20 pounds but without significant limitation of sitting, standing, et cetera.
>
> Q: Is that opinion stated within a reasonable degree of medical certainty?
>
> A: Yes, it is.

> Q: Would he have been able to perform work of that nature on a full or part-time basis?
>
> A: Full time.

Deposition of Richard Kasdan, M.D. August 4, 2004, at 13–14; Reproduced Record (R.R.) at 266–67.

A WCJ is not permitted to substitute her own medical knowledge in making her ruling and must make findings based on the evidence contained in the record. *Zeigler v. Workers' Compensation Appeal Board (Jones Apparel Group, Inc.),* 728 A.2d 421 (Pa.Cmwlth.1999). The credited medical evidence in the record does not support the WCJ's finding that Claimant could only work part-time hours.[1] Therefore, the WCJ erred.

Second, the Board erred when it modified the WCJ's award and credited Dr. Kasdan's opinion that Claimant could work full time hours, not part time hours. The Board's function in reviewing a decision of the WCJ is primarily appellate in nature. *Bethenergy Mines, Inc. v. Workers' Compensation Appeal Board (Skirpan),* 531 Pa. 287, 612 A.2d 434 (1992). The WCJ is the ultimate fact finder in a workers' compensation case and it is the WCJ's role to assess credibility and resolve conflicts in the testimony. *Id.* The Board's role is to simply determine whether, upon consideration of the evidence as a whole, the WCJ's findings have the requisite measure of support in the record. *Id.* Here, the Board erred when it assessed the credibility of Dr. Kasdan and modified the WCJ's award by finding, as a fact, that Claimant

1. Claimant argues that Gerard A. Myers', D.O. (Dr. Myers) testimony supports the WCJ's finding that Claimant could work only part-time hours. I must disagree. Dr. Myers opined generally that Claimant was disabled and could not work. Deposition of Dr. Gerard A. Myers (Dr. Myers Deposition), December 15, 2004, at 34; R.R. at 121. Dr. Myers later testified that although he believed Claimant could not work he stated that "[i]f Mr. Morella [Claimant] wanted to try that [a job that was light-duty and sedentary], I wouldn't hold him back from doing that." Dr. Myers Deposition at 42; R.R. at 129. In any event, Dr. Myers did not offer an opinion as to the number of hours Claimant was capable of working if he tried a light-duty, sedentary job.

could work full time hours when the WCJ failed to credit that portion of Dr. Kasdan's opinion.

Therefore, I would reverse the Board and remand with the direction that the Board remand to the WCJ to make necessary credibility determinations and make findings supported by substantial evidence.