# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amanda Tapper,                              :
                                            : No. 135 C.D. 2014
                        Petitioner          : Submitted: June 13, 2014
                                            :
            v.                              :
                                            :
Workers' Compensation Appeal Board          :
(UPMC/Passavant),                           :
                                            :
                        Respondent          :


BEFORE:    HONORABLE BERNARD L. McGINLEY, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE FRIEDMAN                       FILED:  August 5, 2014


            Amanda Tapper (Claimant) petitions for review of the December 30, 2013, order of the Workers' Compensation Appeal Board (WCAB), which affirmed, as modified, the decisions of a workers' compensation judge (WCJ) denying and dismissing Claimant's multiple claim petitions and reinstatement petition and granting the termination petitions filed by UPMC/Passavant (Employer).  The WCAB modified the WCJ's decisions to reflect Claimant's full recovery from her work injury "as of" September 16, 2010.[1]  We affirm.

---

[1] The WCJ's decisions referenced Claimant's full recovery from her work injury "on or before" September 16, 2010.  (WCJ's Conclusions of Law, No. 3.)

On June 25, 2007, in the course and scope of her employment with Employer, Claimant, a certified nursing assistant, injured her back while bending down to lift a patient's legs. Claimant missed four or five days of work with back pain and then returned to work at a light-duty position for several weeks before returning to full-duty. (WCJ's Findings of Fact, No. 1.a.)

On February 26, 2008, Claimant slipped and fell outside of Employer's emergency room on snow and ice, landing on her buttocks. Claimant worked a light-duty position for six weeks and, thereafter, returned to full-duty. (*Id.*, No. 1.b.)

On October 27, 2008, Claimant experienced low back pain while assisting a co-worker in pulling a combative patient upward on a recliner. Claimant treated at Occupational Health and missed five days of work. Thereafter, Claimant treated with James L. Cosgrove, M.D. Claimant returned to a light-duty position for six months and, thereafter, was released to full-duty. (*Id.*, No. 1.c.)

Claimant alleged that on July 6, 2009, while in the course and scope of her employment with Employer, she experienced back pain when she bent over to pick something up. Claimant reported the injury to Employer. (*Id.*, No. 1.d.) Claimant was placed on light-duty until November when Employer received a copy of Dr. Cosgrove's office notes from Claimant's October 22, 2009, examination, which stated that Claimant's lumbar radiculopathy had resolved and Claimant had completed her physical therapy program. (*Id.*; Employer Letter, 11/3/09, at 1.) Employer notified Claimant by letter dated November 3, 2009, that due to Dr.

Cosgrove's notes, Employer would not support Claimant's continued work accommodation and that Claimant's

> Return to Work Assistance Program will be suspended as of 11/03/09. You will remain off of work until Work*Partners* receive[s] medical [documentation] that supports your requested accommodation or until you provide a note releasing you to full duty Nursing Assistant work . . . . Should you disagree with this decision you may provide Work*Partners* with any additional medical documentation that you feel supports your need for an accommodation at this time.

(Employer Letter, 11/3/09, at 1.)

Employer sent Claimant a second letter on December 2, 2009, acknowledging that Claimant requested leave from November 3, 2009, to January 15, 2010. (Employer Letter, 12/02/09, at 1.) Employer notified Claimant that "[p]ending receipt of the attached documents . . . your eligibility has been reviewed and you are eligible for leave under . . . [the] Family and Medical Leave Act [FLMA] – 11 weeks starting availability." (*Id.*) Employer's letter further stated:

> [i]n order for us to determine whether your absence qualified under the policies listed above, you must return a completed medical certification of you[r] serious health condition and other enclosed forms. You must furnish this documentation within 15 days (by 12/17/2009). A Certification form that sets forth the information necessary to support your leave request is enclosed. Your health care provider must complete and sign the Certification of Health Care Provider for Employee's Own Health Condition form. Please return the completed, signed documents to me. . . .
>
> Failure to return a completed Certification form which supports your request for leave may delay the commencement of your leave or cause UPMC to take other

3

appropriate action, up to and including termination of your employment if unapproved leave time is taken.

(*Id.* at 1-2.)

On December 29, 2009, Employer sent Claimant a third letter notifying Claimant that Employer had not yet received Claimant's documents. Employer informed Claimant that "[f]ailure to return this requested paperwork by 01/13/2010 and/or failure to return to work by this date could result in corrective action being issued upon your return to work. This action would follow the UPMC correction action policy up to and including termination." (Employer Letter, 12/29/09, at 1.)

On January 20, 2010, Employer sent Claimant a fourth letter notifying Claimant that her leave was not approved because "no documentation was returned to certify the leave." (Employer Letter, 1/20/10, at 1.) Employer set forth that Claimant's "unauthorized time away from work may be counted toward your department's time and attendance policy. This may result in disciplinary action up to and including termination." (*Id.* at 1.)

On January 27, 2010, Employer sent Claimant a fifth letter informing Claimant that she failed to qualify for any leave time and that "your active status will be converted to resignation [for] failure to return from a leave." (Employer Letter, 1/27/10, at 1.)

Employer terminated Claimant on January 15, 2010. (WCJ's Findings of Fact, No. 1.d.) After her termination, Claimant filed four claim petitions seeking total disability benefits from January 15, 2010, and continuing. (*Id.*, No. 1.f.)

4

Claimant alleged a low back injury on June 25, 2007; a lumbar sprain on February 26, 2008; a lumbar strain on October 27, 2008; and a low back injury on July 6, 2009. Employer accepted the February 26, 2008, and October 27, 2008, injuries as "medical only" claims. Claimant also filed a reinstatement petition for the October 27, 2008, injury, claiming a recurrence of that injury on July 6, 2009. Employer filed termination petitions with respect to each alleged injury date. (WCJ's Decisions, 8/18/11, at 1.)[2]

At the hearings before the WCJ, Claimant testified that, in 2004, Employer counseled Claimant for excessive absenteeism and put her on "step one counseling." This counseling continued into 2005 because of additional call-offs. In 2007, both before and after Claimant's work injuries, Employer again counseled Claimant for absenteeism and tardiness and issued written warnings. In 2008, Claimant treated with her primary care physician for back pain after lifting furniture at home. In August 2009, Employer put Claimant on "final notice" and informed Claimant that failure to provide a medical excuse in a timely fashion for future absences would result in dismissal. (WCJ's Findings of Fact, Nos. 1.e., 1.f.)

Claimant presented the deposition testimony of Dr. Cosgrove, who is board-certified in physical medicine, rehabilitation, and electrodiagnosis. Dr. Cosgrove first saw Claimant on February 16, 2009, after the October 27, 2008, incident. He reviewed a magnetic resonance imaging scan (MRI) dated March 13,

---

[2] The WCJ filed four identical decisions on August 18, 2011, under separate claim numbers: 3542397, 3425650, 3323686, and 3654180. The WCJ consolidated the separate claim, reinstatement, and termination petitions.

5

2008, which revealed mild disc bulging at L4-5. Dr. Cosgrove felt there was a "possible" lumbar radiculopathy and kept Claimant on light-duty restrictions. Two weeks later, Dr. Cosgrove released Claimant to full duty. (*Id.*, No. 4.)

Dr. Cosgrove next saw Claimant on July 15, 2009, after a recurrence of back pain upon bending at work. Dr. Cosgrove concluded that the herniated disc recurred. Dr. Cosgrove treated Claimant with epidural steroids and released her to light-duty work. A repeat MRI on April 29, 2010, showed additional protrusion at L4-5. Dr. Cosgrove opined that the October 27, 2008, incident caused a disc protrusion at L4-5. (*Id.*)

On cross-examination, Dr. Cosgrove admitted that he was not provided Claimant's history of low back injuries before October 27, 2008. Dr. Cosgrove agreed that Claimant's prior physician diagnosed Claimant with degenerative disc disease and no disc herniation. Dr. Cosgrove acknowledged that Claimant is obese, which puts pressure on her low back. He further acknowledged that obesity is a risk factor for degenerative disc disease, which he agreed is partially responsible for Claimant's low back problems and is a significant contributing factor to her light-duty limitations. (*Id.*) Dr. Cosgrove also admitted that on October 22, 2009, Claimant's condition had resolved and that he was ready to release Claimant to regular-duty. (Cosgrove Dep., 6/28/10, at 25.)

Employer presented the testimony of Kathleen Smith, Employer's emergency department unit director and Claimant's supervisor. Smith stated that she suspended Claimant in August 2009 and provided her a "final notice" based upon

6

violations of Employer's absenteeism policies. Smith testified that Claimant was later terminated for failing to report to work when her leave and light-duty position ended. (WCJ's Findings of Fact, No. 2.)

Employer also presented the testimony of Maureen Little, the human resources director. Little stated that Claimant was dismissed through the progressive discipline policy. Little further stated that after Dr. Cosgrove provided a note in November 2009, stating that Claimant's lumbar radiculopathy had resolved and she could return to full-duty, Claimant applied for FMLA, which was denied. Little stated that Claimant did not return to work after the FMLA was denied. (*Id.*, No. 3.)

Employer presented the deposition testimony of Brian M. Ernstoff, M.D., who is board-certified in physical medicine and rehabilitation. Dr. Ernstoff conducted an independent medical examination (IME) on Claimant on September 16, 2010, took an oral history, and reviewed her medical records. Dr. Ernstoff weighed Claimant in at over 350 pounds and, based upon her medical records, determined that Claimant gained close to 50 pounds since her August 2, 2010, examination by Dr. Bookwalter. Dr. Ernstoff found no limiting factors or findings apart from Claimant's obesity. Dr. Ernstoff opined that Claimant had completely recovered from any injury she may have suffered to her low back as of September 16, 2010. Dr. Ernstoff attributed Claimant's degenerative disc disease to her weight and smoking. (*Id.*, No. 5.)

The WCJ found Claimant's testimony credible except where it conflicted with the credible medical and lay testimony. The WCJ credited the testimony of

7

Smith and Little[3] and determined that Claimant was dismissed for failing to return to her full-duty position with Employer. The WCJ found the testimony of Dr. Cosgrove less than convincing because he was unaware of Claimant's 2007 back problems and her 2008 injury that occurred after a lifting incident at home. Further, Dr. Cosgrove failed to adequately explain whether the work injury or Claimant's obesity caused her light-duty restrictions. The WCJ credited Dr. Ernstoff's testimony because it was consistent with the objective medical evidence, Claimant's history, and common sense. (*Id.*, Nos. 3-5.)

The WCJ concluded that Claimant failed to meet her burden of proof in the claim and reinstatement petitions and that Employer met its burden of proving that Claimant had completely recovered from her work injuries "on or before" September 16, 2010. (WCJ's Conclusions of Law, No. 1.) The WCJ denied and dismissed Claimant's claim and reinstatement petitions and granted Employer's termination petitions effective September 16, 2010. Claimant appealed to the WCAB.

The WCAB found that the WCJ properly denied and dismissed Claimant's claim and reinstatement petitions. The WCAB further determined that Claimant was not entitled to disability benefits from the date of her termination on January 15, 2010, to the date she allegedly recovered, September 16, 2010, because Claimant was unable to establish that her restrictions at the time of her termination

_____

[3] Little testified that Claimant took FMLA as of November 3, 2009; however, the leave was not ultimately approved. Little stated that Claimant failed to report to work or produce medical documentation that she could not work. Smith terminated Claimant on January 15, 2010, for "failure to return from leave." (N.T., 7/15/10, at 13, 22-24.)

8

were causally related to her work injury. Finally, to the extent that the WCJ's conclusion that Claimant recovered from her work injury "on or before" September 16, 2010, could be interpreted as a finding that Claimant was fully recovered before the date of Dr. Ernstoff's examination, the WCAB modified the WCJ's decision to reflect that Claimant fully recovered "as of" September 16, 2010. Claimant now petitions this court for review.[4]

Initially, Claimant contends that the WCAB erred in finding that the WCJ's decisions denying Claimant's claim and reinstatement petitions and granting Employer's termination petitions are supported by substantial evidence. We disagree.

It is well settled that in a claim petition, a claimant bears the burden of proving all elements necessary for an award. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). Specifically, a claimant must establish that she sustained an injury during the course and scope of her employment and that the injury was causally related to her employment. *Delaware County v. Workers' Compensation Appeal Board (Baxter-Coles)*, 808 A.2d 965, 967-68 (Pa. Cmwlth. 2002). A claimant must also prove that the injury resulted in a disability that caused a wage loss. *Id.* at 968. Similarly, in a reinstatement petition, a claimant bears the burden of proving that her disability increased or recurred and that her physical condition actually changed in some way, along with the duration of her disability. *Mader v. Workmen's Compensation Appeal Board (USAir,*

---

[4] Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law, and whether necessary factual findings are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704.

9

*Inc.)*, 669 A.2d 511, 513 (Pa. Cmwlth. 1996). Conversely, in a termination petition, the employer bears the burden of proving that all disability related to a work injury has ceased or that ongoing disability results from a non-work-related source. *Campbell v. Workers' Compensation Appeal Board (Antietam Valley Animal Hospital)*, 705 A.2d 503, 506-07 (Pa. Cmwlth. 1998).

Our review in this matter is not a re-weighing of all of the evidence, but a review of whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704. "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. It is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made." *Delaware County*, 808 A.2d at 969 (internal citations omitted). "If supported by substantial evidence, a WCJ's findings are conclusive on appeal, despite the existence of contrary evidence." *Watson v. Workers' Compensation Appeal Board (Special People in Northeast)*, 949 A.2d 949, 953 (Pa. Cmwlth. 2008). When reviewing witnesses' testimony, determinations as to weight and credibility are solely for the WCJ as fact-finder. *Cittrich v. Workmen's Compensation Appeal Board (Laurel Living Center)*, 688 A.2d 1258, 1259 (Pa. Cmwlth. 1997). A WCJ may accept or reject the testimony of any witness in whole or in part. *Lombardo v. Workers' Compensation Appeal Board (Topps Company, Inc.)*, 698 A.2d 1378, 1381 (Pa. Cmwlth. 1997).

Here, Claimant sought full disability benefits from her termination date of January 15, 2010. Thus, Claimant was required to establish that her restrictions at

10

the time of her termination were causally related to her work injuries. The WCJ relied upon Dr. Ernstoff's credible testimony that, based upon Claimant's medical records from Dr. Cosgrove, Claimant's lumbar radiculopathy had resolved and, therefore, no objective findings supported a continued need for modified duty work as of November 2009.[5] (Ernstoff Dep., 2/24/11, at 13; Employer Letter, 11/3/09, at 1.)

Dr. Ernstoff credibly testified that the progression of Claimant's degenerative disc disease in the MRI scan reports from March 13, 2008, through April 29, 2010, was related to Claimant's obesity, smoking, and lack of exercise, not to any work-related event or activity.[6] (*See* Ernstoff Dep., 2/24/11, at 34-35; Ernstoff IME, 10/5/10, at 10.) Dr. Ernstoff further opined that Claimant had fully recovered from any alleged work-related injury as of September 16, 2010, the date he examined Claimant, and that Claimant could return to full, unrestricted activities. (Ernstoff Dep., 2/24/11, at 36.)

Dr. Ernstoff's credible testimony supports the WCJ's finding that Claimant's degenerative disc disease is the result of her obesity and smoking, not her alleged work injuries. Thus, the WCJ did not err in determining that Claimant failed

---

[5] On cross-examination, Dr. Cosgrove admitted that on October 22, 2009, Claimant's condition had resolved and that he was ready to release Claimant to regular-duty. (Cosgrove Dep., 6/28/10, at 25.)

[6] We note that the cause of Claimant's work injuries was never at issue prior to the filing of her claim petitions. Employer accepted the February 26, 2008 and October 27, 2008, claims as medical only. Therefore, Claimant needed to prove that the work injuries caused her current back problems, not her prior non-work-related injury or her degenerative disc disease.

11

to prove a compensable work injury or a recurrence of a prior work injury in January 2010.[7] Further, based on the credited evidence of record, the WCJ did not err in granting Employer's termination petitions.[8]

Next, Claimant contends that the WCAB went beyond the scope of its review in changing the specific language of the WCJ's decision to "interpret" what it thought the WCJ meant to hold with respect to the termination of Claimant's benefits "on or before" the date of Employer's IME of September 16, 2010. We disagree.

The WCAB is authorized to correct or modify a WCJ's decision to conform to the factual and legal findings contained in that decision. *See Bentley v. Workers' Compensation Appeal Board (Pittsburgh Board of Education)*, 987 A.2d 1223, 1230 (Pa. Cmwlth. 2009) (stating that the WCAB can make a technical correction to a WCJ's decision to make it conform to the evidence); *Morella v. Workers' Compensation Appeal Board (Mayfield Foundry, Inc.)*, 935 A.2d 598, 602 (Pa. Cmwlth. 2007) (holding that "it was within the [WCAB's] province to make the WCJ's findings conform to the award").

Here, Claimant contested the language used by the WCJ, and the WCAB clarified the language to Claimant's benefit by changing "on or before" to "as of." It

---

[7] We do not consider the non-credited testimony of Dr. Cosgrove and Claimant, as it is the WCJ's duty to weigh the evidence and determine its credibility, not this court's. *See Cittrich*, 688 A.2d at 1259; *Lombardo*, 698 A.2d at 1381.

[8] The credited testimony of Dr. Ernstoff reveals that Claimant had fully recovered from any alleged work injury as of Dr. Ernstoff's IME of Claimant on September 16, 2010. (Ernstoff's Dep., 2/24/11, at 27.)

is irrelevant whether Claimant recovered three months or three days prior to the IME of September 16, 2010. Even with this finding, if Claimant were receiving benefits, they would terminate on September 16, 2010, not before. The WCAB did not exceed the scope of its review in clarifying the WCJ's language.

Accordingly, we affirm.

_____
ROCHELLE S. FRIEDMAN, Senior Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amanda Tapper,                :

                                       : No. 135 C.D. 2014

               Petitioner    :

                                         :

                   v.               :

                                         :

Workers' Compensation Appeal Board  :
(UPMC/Passavant),                      :

                                         :

             Respondent   :

## O R D E R

AND NOW, this 5th day of <u>August</u>, 2014, we hereby affirm the December 30, 2013, order of the Workers' Compensation Appeal Board.

 

_____
ROCHELLE S. FRIEDMAN, Senior Judge