IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Khary Parks,                                       :
                          Petitioner               :
                                                   :   No. 931 C.D. 2020
                  v.                               :   No. 932 C.D. 2020
                                                   :
Urban Outfitters, Inc. (Workers'                   : Submitted: March 25, 2022
Compensation Appeal Board),                        :
                          Respondent               :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE LORI A. DUMAS, Judge

*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                           FILED: August 11, 2023


In these consolidated appeals, Khary Parks (Claimant) petitions for review
of the September 10, 2020 Orders of the Workers' Compensation Appeal Board
(Board). The Board affirmed the Workers' Compensation Judge's (WCJ) Decisions
which (1) granted, in part, Claimant's Claim Petitions, and (2) granted the Termination
Petitions filed by Urban Outfitters, Inc. (Employer). Upon review, we affirm.

## I.    FACTS AND PROCEDURAL HISTORY

Claimant was injured during the course and scope of his work as a line
cook for Employer on August 22 and 26, 2018, when he slipped and fell on a wet floor.
Employer accepted the work-related injury via a Notice of Temporary Compensation
Payable (NTCP) that described Claimant's injury as a "low back contusion."
(Reproduced Record (R.R.) at 3a.) On September 5, 2018, Claimant filed two Claim
Petitions alleging injuries to his neck, arms, and mid and lower back, resulting in total

disability as of August 26, 2018. (R.R. at 3a-7a, 8a-12a.) Employer timely filed Answers to both Claim Petitions on September 17, 2018, denying all allegations. (R.R. at 14a-22a.) On November 20, 2018, Employer filed two Termination Petitions alleging that as of October 25, 2018, Claimant had fully recovered from the work-related injuries per the opinions of Dr. Scott Rushton. (R.R. at 123a-24a.) Claimant's two Claim Petitions and Employer's Termination Petitions were consolidated for hearing.

Before the WCJ, Claimant testified live at the May 21, 2019 hearing and submitted a copy of his November 12, 2018 deposition transcript. At his deposition, Claimant testified that, after the initial fall on August 22, 2018, he reported the incident to his supervisor, who gave him the choice of doctors but directed him to a Patient First treatment center across the street from Employer. (R.R. at 55a.) Patient First provided Claimant with a restriction note for Employer, which stated that Claimant could not bend or twist his back and could not lift over 10 pounds. (R.R. at 56a, 114a-15a.) Claimant returned to work for his next shift and went back to Patient First again on August 25, 2018. (R.R. at 56a-57a.) During that visit to Patient First, the doctor provided Claimant with another restriction note for Employer, which provided that Claimant could not lift more than 20 pounds but could bend and twist. (R.R. at 57a, 115a.) On August 26, 2018, Claimant fell again at work and notified his direct supervisor, Ryan Bloome, but continued working his shift. (R.R. at 59a-60a.) Claimant did not go to Patient First that same day and instead went the following day on August 27, 2018. (R.R. at 60a.) Again, Patient First provided Claimant with a restriction note for Employer, which stated he could not lift, push, pull, or carry greater than 10 pounds, could not perform prolonged standing for more than five minutes, and should rest and ice every hour as needed for pain. (R.R. at 61a, 118a-19a.) Claimant

returned to Patient First on August 30, 2018, and received an additional restriction note for Employer. *Id.* Claimant stopped treatment with Patient First and instead was treated by Employer's doctor at Concentra Medical Center, which provided Claimant with a restriction note dated September 6, 2018, that took him out of work. (R.R. at 62a-63a, 120a.) Claimant returned to Concentra and received a restriction note on September 10, 2018, which provided that Claimant could not lift over 5 pounds, could not push or pull over 10 pounds, could stand up to 3 hours per day, could not squat or kneel, and could not reach above his shoulders or head. (R.R. at 63a,121a-22a.)

Claimant testified that on August 22, 2018, he was having occasional pain due to several previous back injuries, caused by a car accident in 1997, a dance floor falling on him in 2007, a second car accident in 2012, and a work injury in 2017. (R.R. at 48a-50a.) Claimant stated that although he had pain from his previous injuries when he started working for Employer, it did not limit his work. (R.R. at 480a.) Claimant further testified that in addition to his low back and leg pain, he has intermittent neck pain in his shoulders. (R.R. at 104a.) Claimant testified that Employer offered him a light-duty job scooping risotto balls. (R.R. at 80a, 484a.) Claimant attempted the risotto job but only lasted 45 minutes because "it was just too much," and told Steven Linneman, Employer's Culinary Director, of his difficulties performing the job. *Id.* Claimant stated he was never offered another light-duty job. *Id.* Claimant indicated he did not feel capable of performing his full-duty or light-duty job. (R.R. at 67a-68a.) Claimant stated that he had surgery on his lumbar spine on April 22, 2019, with Dr. Christian Fras, and since then felt sore and used a cane. (R.R. at 489a, 493a.) Claimant also testified of his difficulties after the work incidents, stating that he was evicted due to his unemployment. (R.R. at 70a.)

Claimant submitted the February 27, 2019 deposition transcript of Dr. Mario Littman, who began treating him on October 12, 2018. Dr. Littman diagnosed post-traumatic syndrome with acute cervical sprain, acute dorsal sprain, acute lumbosacral sprain with exacerbation, and contusion of shoulders, and ruled out radiculopathy. (R.R. at 164a.) Dr. Littman prescribed massage, hot packs, and exercises. (R.R. at 165a.) Claimant also presented the May 13, 2019 deposition testimony of Dr. Fras, who began treating Claimant on February 19, 2019. On April 22, 2019, Dr. Fras performed a lumbar laminectomy and decompression surgery, a lumbar fusion at L4-5 and L5-S1, and removed disc herniation at both levels and stabilized the spine by placing screws and a rod along with a bone graft. (R.R. at 388a-89a.) Dr. Fras stated that Claimant was incapable of returning to any type of work activity while under his care. (R.R. at 393a.)

Employer presented the March 22, 2019 deposition testimony of Ryan Bloome, who was Claimant's direct supervisor and witnessed both of Claimant's falls. (R.R. at 229a-33a.) Mr. Bloome testified that after the first fall, Claimant was treated at Patient First and received a treatment/restriction note, which he and Claimant reviewed to ensure Claimant's work was within the restrictions. (R.R. at 233a-34a.) After the second fall, Claimant finished his shift that day, and the next day reported to work and finished his shift but complained of pain. (R.R. at 235a-37a.) After his shift, Claimant returned to Patient First and received another treatment note. (R.R. 237a-38a.)

Employer presented the March 22, 2019 deposition testimony of Steven Linneman, who did not personally witness Claimant's falls, but met with Claimant to review his work restrictions from Patient First. (R.R. at 265a.) On August 31, 2018, Mr. Linneman met with Claimant to review his work restriction, specifically not being

able to stand for more than five minutes, and offered him a light-duty job scooping risotto balls. (R.R. at 270a-73a.) Mr. Linneman provided Claimant with two tables – a low table with a stool and an identical high table so Claimant could sit and stand. (R.R. at 272a.) Mr. Linneman testified that it was another employee's job to lift the risotto ball trays once Claimant completed the scooping. (R.R. at 273a.) Claimant worked the risotto job for 45 minutes and left because he "was in too much pain to do the sitting and standing routine," but he did not seek medical attention. *Id.* On September 12, 2018, Mr. Linneman told Claimant during a phone call that both full-duty and light-duty work remained available to Claimant. (R.R. at 274a-75a.)

Lastly, Employer presented the March 28, 2019 deposition transcript of Dr. Scott Rushton, who performed an independent medical examination (IME) of Claimant on October 25, 2018. Dr. Rushton stated that, during the IME, Claimant complained of low-back, mid-back, and neck pain. (R.R. at 296a.) Dr. Rushton opined that if Claimant had a work-related injury from the August 2018 falls, it was limited to a cervical and lumbar spine strain and sprain. (R.R. at 301a-03a.) He opined that Claimant had no lasting restrictions related to the fall, and there were no objective findings to substantiate any of Claimant's subjective complaints. (R.R. at 303a.) Dr. Rushton indicated that Claimant could return to full duty with no restrictions. (R.R. at 303a-04a.) Dr. Rushton confirmed that Claimant's current issues are unrelated to the August 2018 falls. (R.R. at 304a-07a.) Based upon the IME, Dr. Rushton opined, within a reasonable degree of medical certainty, that Claimant's spine surgery with Dr. Fras was not necessary for his August 2018 work injuries. (R.R. at 312a-13a.)

The WCJ found that Claimant fell on August 22 and 26, 2018, and sustained an injury. (WCJ's Decision at 13.) The WCJ did not find Claimant's testimony credible that he was homeless as a result of the injury, that he was unable to

5

work a light-duty job, or that the injury required surgery. (WCJ's Decision at 14.) The WCJ based her conclusions on her "personal observations of Claimant's affect and demeanor during his live testimony." *Id.* The WCJ found Mr. Linneman's and Mr. Bloome's testimony to be credible. *Id.* The WCJ found that although Claimant alleged Employer would not accommodate his restrictions, Employer offered him a light-duty job that permitted him to sit or stand as needed. *Id.* Although Claimant testified that he needed the income from work, Claimant did not perform the light-duty job beyond 45 minutes. *Id.* The WCJ also found that Claimant's eviction proceedings started well before the August 2018 falls and was not a result of his work injury. *Id.* The WCJ accepted Dr. Rushton's opinions over those of Dr. Fras and Dr. Littman because the diagnostic studies did not show any significant changes over the course of time and the studies performed within only a few weeks of the injuries revealed no traumatic findings. *Id.* The WCJ found that Claimant had fully recovered as of October 25, 2018, and that his remaining medical issues were unrelated to the August 2018 work incidents. *Id.*

The WCJ concluded that Claimant failed to meet his burden, that Employer had met its burden, and that Employer presented a reasonable contest. *Id.* The WCJ accordingly granted, in part, Claimant's Claim Petitions to the extent Claimant "sustained a lumbar spine contusion and sprain" and concluded that medical benefits are payable until the date of Dr. Rushton's IME. (WCJ's Decision at 15.) The WCJ denied Claimant's Claim Petitions in all other respects. *Id.* Additionally, the WCJ granted Employer's two Termination Petitions effective October 25, 2018. *Id.* Claimant appealed to the Board, which affirmed.

Claimant now appeals to this Court.

6

## II.  ISSUES[1]

On appeal,[2] Claimant presents the following five issues:

(1)  Whether the WCJ capriciously disregarded uncontroverted evidence.
(2)  Whether Employer's medical expert's opinions were incompetent and/or contradicted by the overwhelming evidence in the record.
(3)  Whether the WCJ's credibility determinations were sufficiently reasoned.
(4)  Whether the WCJ failed to address Employer's deficient Answer to Claimant's Claim Petitions.
(5)  Whether a remand is necessary, should Claimant be successful in whole or in part on any issue, to calculate Claimant's workers' compensation rate, award of counsel fees, and reimbursement of litigation costs.

(Claimant's Br. at 3.)

## III.  DISCUSSION

### A. Capricious Disregard

First, Claimant argues that the WCJ capriciously disregarded uncontroverted evidence that Employer's doctor imposed work restrictions, that Employer knew of those work restrictions, and that Employer failed to offer him a job within those restrictions.  (Claimant's Br. at 22.)

In a workers' compensation proceeding, the WCJ is the ultimate factfinder and the sole arbiter of credibility and weight of evidence.  *Rissi v. Workers'*

---

[1] We note that the format of Claimant's brief is difficult to comprehend.  Claimant lists cases in bullet form and does not fully develop analysis supporting his argument with those cases.  We will review the cognizable arguments we can glean from Claimant's brief.

[2] Our review in a workers' compensation appeal is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated.  *City of Scranton v. Workers' Compensation Appeal Board (Roche)*, 909 A.2d 485, 486 n.1 (Pa. Cmwlth. 2006).

7

*Compensation Appeal Board (Tony DePaul & Son)*, 808 A.2d 274, 278-79 (Pa. Cmwlth. 2002). If the facts as found by the WCJ rest on substantial evidence, they may not be disturbed. *Bartholetti v. Workers' Compensation Appeal Board (School District of Philadelphia)*, 927 A.2d 743, 747 (Pa. Cmwlth. 2007). It is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made. *Furnari v. Workers' Compensation Appeal Board (Temple Inland)*, 90 A.3d 53, 60 (Pa. Cmwlth. 2014). The WCJ is free to accept or reject the expert testimony of any witness, including a medical witness, in whole or in part. *Riggle v. Workers' Compensation Appeal Board (Precision Marshall Steel Co.)*, 890 A.2d 50, 57 n.11 (Pa. Cmwlth. 2006). On appeal, the Board may review the nature of the evidence submitted to determine if it is sufficient to state a claim; however, reinterpretation of the evidence by the Board is in excess of its scope of review. *Bartholetti*, 927 A.2d at 747. Although the Board must determine whether the WCJ's findings have the requisite measure of support in the record, findings of fact can be overturned only if they are arbitrary or capricious. *Lehigh County Vo-Tech v. Workmen's Compensation Appeal Board (Wolfe)*, 652 A.2d 797, 800 (Pa. 1995).

A capricious disregard of evidence occurs when the WCJ deliberately or baselessly disregards apparently trustworthy evidence. *Williams v. Workers' Compensation Appeal Board (USX Corporation-Fairless Works and USX Corp.)*, 862 A.2d 137, 144 (Pa. Cmwlth. 2004). Where there is substantial evidence to support a WCJ's findings, and those findings support the WCJ's legal conclusions, it should remain a rare instance in which an appellate court would disturb an adjudication based upon capricious disregard. *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487 n.17 (Pa. 2002). Where the WCJ

discusses the evidence in question, but rejects it as less credible or assigns it less evidentiary weight than other evidence, the WCJ's determination does not constitute a capricious disregard of evidence. *Reed v. Workers' Compensation Appeal Board (Allied Signal Inc.)*, 114 A.3d 464, 471 (Pa. Cmwlth. 2015). Unless made arbitrarily or capriciously, a WCJ's credibility determinations will not be disturbed when the basis for such is present in the record on appeal. *Empire Steeling Castings, Inc. v. Workers' Compensation Appeal Board (Cruceta)*, 749 A.2d 1021, 1027 (Pa. Cmwlth. 2000).

An employer bears the burden of proving that suitable employment is available within the claimant's medical restrictions. *Furnari*, 90 A.3d at 71. A position is "actually available" if it can be performed by the claimant, considering his physical restrictions and limitations, age, intellectual capacity, education, previous work experience, and other relevant considerations. *Id.*

Instantly, we are only concerned with whether the light-duty job scooping risotto was actually available to Claimant, as Claimant argues Employer never offered a light-duty job within his restrictions. Contrary to Claimant's contention, the evidence pertaining to Employer's knowledge of Claimant's work restrictions and light-duty job was not "uncontroverted." The WCJ made the following findings regarding Claimant's light-duty position.

> Claimant sustained work[-]related sprains/strains/contusions on August 22 and 26, 2018[,] which resulted in light[-]duty restrictions. Employer offered light[-]duty work within his restrictions and Claimant failed to continue working in that capacity. Claimant was fully recovered from his work-related diagnoses as of October 25, 2018. The remainder of Claimant's medical issues were unrelated to the work injuries and [were] [preexisting] and long[-]standing and led to surgery with Dr. Fras.

(WCJ's Decision at 14.) The WCJ credited the testimony of Mr. Bloome and Mr. Linneman, who stated that Employer was aware of Claimant's injuries, was aware of

9

his restrictions, met with Claimant to discuss his restrictions, and offered him a light-duty position where he could sit at a low table or stand at a high table to prepare food. (WCJ Decision at 12-13.) The WCJ found that Claimant only attempted the light-duty job scooping risotto for 45 minutes, chose not to seek medical attention after leaving work, and failed to continue working that job. *Id.* The WCJ simply credited Employer's witnesses and did not credit Claimant or his witnesses on this issue, which is not tantamount to a capricious disregard of any evidence. *Reed*, 114 A.3d at 471.

Moreover, whether Claimant was offered a light-duty job that was within his work restrictions is irrelevant to whether he had fully recovered as of the October 25, 2018 IME. The WCJ granted Claimant's Claim Petitions through the date of the IME, and granted Employer's Termination Petitions. Dr. Rushton testified that as of October 25, 2018, Claimant had fully recovered from his work-related injuries and was capable of returning to full-duty work. (R.R. at 303a-04a.) Hence, the WCJ granted Employer's Termination Petitions as of October 25, 2018.

Accordingly, we conclude the WCJ did not disregard uncontroverted evidence. Rather, the WCJ made credibility findings which was within her purview.

## B. Medical Expert Opinion Incompetent

From what the Court can surmise from Claimant's brief, Claimant is arguing that because Dr. Rushton saw no past treatment records, the operative report from Claimant's spine surgery, or the computerized tomography (CT) and discogram, his medical opinions were incompetent. (Claimant's Br. at 17).

Although the WCJ has exclusive province over questions of credibility and evidentiary weight, "the question of competency of the evidence is one of law and fully subject to our review." *Cerro Metal Products Co. v. Workers' Compensation Appeal Board (Plewa)*, 855 A.2d 932, 937 (Pa. Cmwlth. 2004). It is well established

10

that "[c]ompetency when applied to medical evidence, is merely a question of whether the [witness's] opinion is sufficiently definite and unequivocal to render it admissible." *Id.* "[M]edical evidence is unequivocal as long as the medical expert, after providing a foundation, testifies that in his professional opinion he believes or thinks the facts exist." *Id.* Further, "[e]ven if the witness admits to uncertainty, reservation, doubt or lack of information with respect to scientific or medical details, as long as the witness does not recant the opinion first expressed, the evidence is unequivocal." *Id.* Additionally, "the fact that a medical expert does not have all of a claimant's medical records goes to the weight given the expert's testimony, not competency." *Marriott Corp. v. Workers' Compensation Appeal Board (Knechtel)*, 837 A.2d 623, 631 n.10 (Pa. Cmwlth. 2003).

Here, the crux of Claimant's argument is that Dr. Rushton's testimony was not competent because he relied only upon records dated after the August 2018 falls. (Claimant's Br. at 13.) Based on our review of Dr. Rushton's deposition transcript, we conclude that his testimony was competent as a matter of law. First, Dr. Rushton's opinion was "sufficiently definite and unequivocal to render it admissible." *Cerro Metal Products*, 855 A.2d at 937. In his deposition, Dr. Rushton testified that he first saw Claimant relative to his August 2018 work injuries on October 25, 2018. (R.R. at 293a.) Dr. Rushton testified that Claimant's work injury aggravated his cervical/lumbar spine strain and sprain. (R.R. at 301a-02a.) On cross-examination, Dr. Rushton did not waiver in his opinion that the work injury caused by the August 2018 falls ceased by the October 25, 2018 IME. Accordingly, Dr. Rushton's testimony was sufficiently unequivocal.

Second, while Dr. Rushton did not have all of Claimant's medical records, when "viewed as a whole," Dr. Rushton did not base his opinion solely "on inaccurate

11

or false information." *American Contracting Enterprises v. Workers' Compensation Appeal Board (Hurley)*, 789 A.2d 391, 396 (Pa. Cmwlth. 2001). Here, Dr. Rushton admitted that he did not have physical records from Claimant's medical history pre-injury. However, Dr. Rushton took a full medical history from Claimant during the IME. Dr. Rushton testified that

> [Claimant] told [him] in 2007 he had low back pain when he was working at Bryn Mawr College when he had an injury related to a dance floor. Apparently[,] the dance floor fell directly on top of him while working at Bryn Mawr College. He told me he was receiving no active treatment for his low back at the time of the August 2018 slip and fall.
>
> He also reported though [sic] the closer injury of 2017 when he reported lifting something and also sustained an additional low back injury. He told me that he received two to three Cortisone injections and believes after the third injection he felt improvement and that was related to the 2017 incident. His lower back treatment following that accident of 2017 was guided by the Premier Orthopedic Group according to his history.

(R.R. at 294a-95a.) Dr. Rushton also reviewed the May 18, 2017 lumbar magnetic resonance imaging (MRI) report, the January 15, 2019 cervical and lumbar MRI, and the March 15, 2019 CT scan of his lumbar spine. (R.R. at 317a.) Dr. Rushton compared the pre-injury and post-injury studies and opined that there were no acute or traumatic findings. (R.R. at 305a.) Dr. Rushton indicated that Claimant had a preexisting degenerative spine disease and there were no findings in the 2017 MRI that would indicate the August 2018 falls were or could be attributed to trauma. (R.R. at 305a-06a.) Since Dr. Rushton's testimony was not based solely on inaccurate information, Claimant's argument that Dr. Rushton's testimony was incompetent lacks merit. Claimant merely seeks to have us reweigh the evidentiary determinations made

12

by the WCJ, which we may not do because such determinations are within the exclusive province of the WCJ as the factfinder and not subject to review on appeal. *Cerro Metal Products*, 855 A.2d at 937.

## C. WCJ's Reasoned Decision

Next, Claimant argues that the decision by the WCJ was not a "reasoned decision" because the WCJ's reasons for crediting the testimony of Dr. Rushton cannot provide the basis for a reasoned decision. Claimant also argues that the testimony of Claimant's medical experts was rejected "for irrational reasons, unsupported by the Record." (Claimant's Br. at 38.)

Section 422(a) of the Workers' Compensation Act[3] provides, in pertinent part, that all parties in a workers' compensation case are "entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." 77 P.S. § 834. The decision of the WCJ is "reasoned" if it allows for meaningful appellate review without further elucidation. *Daniels v. Workers' Compensation Appeal Board (Tristate Transportation)*, 828 A.2d 1043, 1052 (Pa. 2003). To satisfy this standard, the WCJ does not need to discuss every piece of evidence in the record. *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Co.)*, 893 A.2d 191, 193 n.3 (Pa. Cmwlth. 2006).

Where medical experts have testified solely by deposition, resolution of conflicting medical testimony cannot be supported by a mere statement that one expert was deemed more credible than another. *Daniels*, 828 A.2d 1053. While the WCJ is the sole arbiter of credibility and evidentiary weight, she must provide an adequate

---

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.1, 2501-2710.

basis for rejecting a witness's testimony when he does not testify live before the WCJ. *Id.* at 1052-53. "[S]ome articulation of the actual objective basis for the credibility determination must be offered for the decision to be a 'reasoned' one which facilitates effective appellate review." *Id.* at 1053. When the WCJ reviews a deposition transcript of a medical expert, the WCJ must articulate an actual objective basis in support of any corresponding credibility determination in order to permit effective appellate review. *Gumm v. Workers' Compensation Appeal Board (Steel)*, 942 A.2d 222, 228 (Pa. Cmwlth. 2008). Further, the "reasoned decision [standard] does not require the WCJ to give a line-by-line analysis of each statement by each witness, explaining how a particular standard affected the ultimate decision." *Id.* Thus, "[u]nless made arbitrarily or capriciously, [the] WCJ's credibility determinations will be upheld on appeal." *Id.*

Here, the WCJ clearly outlined the evidence considered and the credibility determination made as well as the reasons underlying her ultimate determination that Claimant's injury had resolved by October 25, 2018. As to the medical evidence presented, the WCJ explained the reasons that she credited Dr. Rushton's testimony as it related to the cause of Claimant's injury/disability because the "diagnostic studies did not show any significant changes over the course of time and the diagnostic studies performed within only a few weeks of the injuries revealed no traumatic findings." (WCJ's Decision at 14.) Moreover, the WCJ explained her credibility findings for each witness, including Claimant, who testified at the hearing and by deposition. The WCJ credited Claimant's testimony, in part, regarding Claimant's August 2018 falls and injuries. The WCJ discredited Claimant's testimony regarding lasting effects of his injuries due to the WCJ's personal observations of Claimant's affect and demeanor during his live testimony and also because the remainder of Claimant's evidence did not support his allegations. *Id.* The WCJ credited Mr. Bloome and Mr. Linneman's

14

testimony regarding the falls because they both supported Claimant's testimony in that regard. *Id.* The WCJ credited Dr. Rushton's testimony over Dr. Fras' and Dr. Littman's testimony because his testimony was more credible and persuasive as it pertained to Claimant's disability and condition. *Id.* The WCJ further determined that Claimant's medical issues were unrelated to his August 2018 falls and instead were preexisting and long-standing which led to his surgery with Dr. Fras. *Id.*

Accordingly, the WCJ adequately articulated the actual objective basis for her credibility determinations. Therefore, we conclude that Claimant's challenge is without merit.

### D. Employer's Answer to Claim Petition

Claimant contends that the WCJ and Board erred by failing to address the "relevance and consequence of [Employer's] deficient Answer[s] to the Claim Petition[s]." (Claimant's Br. at 3.) Claimant argues that simply stating that an "[a]llegation is specifically denied with strict proof demanded at time of trial" is an inadequate response.

Section 416 of the Act, in pertinent part, states:

> **Every fact alleged in a claim petition not specifically denied by an answer so filed by an adverse party shall be deemed to be admitted by him.** But the failure of any party or of all of them to deny a fact alleged in any other petition shall not preclude the [WCJ] before whom the petition is heard from requiring, of his own motion, proof of such fact. If a party fails to file an answer and/or fails to appear in person or by counsel at the hearing without adequate excuse, the [WCJ] hearing the petition shall decide the matter on the basis of the petition and evidence presented.

77 P.S. § 821 (emphasis added). Specific denial requires that the employer denies each and every factual allegation by the claimant. *See St. Denis v. Workmen's Compensation Appeal Board*, 371 A.2d 252, 253 (Pa. Cmwlth. 1977) ("We agree that a defendant

15

must specifically deny factual allegations in a claim petition."); *General Electric Co. v. Workmen's Compensation Appeal Board (Valsamaki)*, 593 A.2d 921, 923 (Pa. Cmwlth. 1991) ("[E]very fact alleged in a claim petition not specifically denied by an answer shall be deemed to be admitted."). The specific denial to a particular factual allegation identifies the "cognizable issues" for review by the WCJ. *General Electric*, 593 A.2d at 923. In identifying the "cognizable issues" for review, the specific denial need not proffer specific evidence against the factual allegation but only identify the factual allegation being denied with a sentence stating the employer's answer. *Leber v. Workmen's Compensation Appeal Board (Yellow Freight Sys.)*, 628 A.2d 481, 496 (Pa. Cmwlth. 1993). A satisfactory specific denial may be written as: "12. Specifically denied and strict proof demanded" when a claimant outlines his individual allegations numerically because the WCJ is notified to what particular factual allegation the employer is specifically denying which enables the WCJ to develop the record on that issue. *Id.*; *see also General Electric*, 593 A.2d at 923.

Here, Employer indicated in its Answers that "[a]llegation is specifically denied with strict proof demanded at the time of trial." (R.R. at 14a-16a.) Employer did not simply make this response in each paragraph of its Answers, but instead made it to each and every fact alleged in Claimant's Petitions that Employer disputed. As such, we conclude that Employer's Answers were satisfactory because the specific denial was sufficient to raise the issue of notice, which the WCJ properly addressed at the hearing.

16

## IV. CONCLUSION

For the foregoing reasons, the Board's decision is affirmed.[4]

_____
PATRICIA A. McCULLOUGH, Judge

---

[4] Due to our disposition, we need not address Claimant's final issue regarding whether a remand is necessary for further proceedings.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Khary Parks,                                :
               Petitioner        :
                           :   No.  931 C.D. 2020
        v.                             :   No.  932 C.D. 2020
                           :
Urban Outfitters, Inc. (Workers'     :
Compensation Appeal Board),          :
               Respondent      :

## ***ORDER***

AND NOW, this 11th day of  August, 2023, the September 10, 2020 Orders of the Workers' Compensation Appeal Board are hereby AFFIRMED.

 

_____
PATRICIA A. McCULLOUGH, Judge